_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

US DISTRICT COURT

for the

DISTRICT OF MARYLAND US

(Northern Division)

JUN 0 4 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| WILLIAM JOHN JOSEPH HOGE III | ) Case No.: 1:14-cv-01683-ELH |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) **ANSWER OF DEFENDANT, COUNTERCLAIMS OF** |
| | ) **WILLIAM M. SCHMALFELDT AND JURY DEMAND** |
| WILLIAM M. SCHMALFELDT | ) |
| | ) |
| *Defendant* | ) |
| | |
| | ) |
| WILLIAM M. SCHMALFELDT | ) |
| | ) |
| *Counterclaim Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM JOHN JOSEPH HOGE III | ) |
| | ) |
| *Counterclaim Defendant* | ) |
| | |
| WILLIAM M. SCHMALFELDT | ) |
| | ) |
| *Counterclaim Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| CHRIS S. HEATHER | ) |
|     2830 Arlington Ave., Upper | ) |
|     Racine, Wisconsin 53403 | ) |
| | ) |
| *Counterclaim Defendant* | ) |
| | |
| WILLIAM M. SCHMALFELDT | ) |
| | ) |
| *Counterclaim Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| "PAUL KRENDLER" (Anonymous Blogger) | ) |
| | ) |
| *Counterclaim Defendant* | ) |

## ANSWER

Defendant William M. Schmalfeldt, in answer to Plaintiff William John Joseph Hoge III's Complaint, denies and avers as follows:

## NATURE OF THE ACTION

1.     Defendant avers that this is an action for copyright infringement. He denies the reproduction Plaintiff's copyrighted work was unauthorized, or a preparation of derivative work. Defendant avers that Plaintiff has a copyright interest in the works described, but Defendant also avers that all works used buy Defendant were used under the terms of the Fair Use Doctrine of the US Copyright Law, 17 USC § 107. Defendant denies that use of the works was unauthorized and infringing.

2.     Defendant denies the allegations of Paragraph 2 of the Complaint *in toto*.

3.     Denied *in toto*.

## JURISDICTION

4.     Defendant submits to the jurisdiction of this Court.

5.     Defendant submits to this Court as the proper venue for this action.

## PARTIES

6.     Defendant admits to the averments of Plaintiff in Paragraph 7 of the Complaint.

7.     Defendant admits to the averments of Plaintiff in Paragraph 8 of the Complaint except as noted. Defendant denies his conduct was harassment as described by Maryland Law 3-803. Defendant is currently awaiting word from the Maryland Court of Appeals on his petition for a writ of certiorari in appeal of the peace order.

**ANSWERS TO MR. HOGE'S COMPLAINTS**

8.      Defendant admits to the averments of Plaintiff in Paragraph 9 of the Complaint.

9.      Defendant admits to the averments of Plaintiff in Paragraph 10 of the Complaint.

10.      Defendant does not have enough information to form an opinion as to Plaintiff's averment in Paragraph 11 of the Complaint. Defendant is aware that Plaintiff claims he purchased the rights he has claimed. But Defendant has never seen a shred of evidence or proof that this transaction was ever legally effected.

**ANSWER TO PLAINTIFF'S COMPLAINT ON COPYRIGHT INFRINGEMENTS**

11.      Defendant admits to the averments of Plaintiff in Paragraph 12 of the Complaint.

12.      Defendant denies the averment made in Paragraph 13 of the Complaint.

13.      Defendant admits in part and denies in part the averments made by Plaintiff in Paragraph 14 of the Complaint. Defendant is not aware of Plaintiff ever filing a DMCA takedown notice or infringement notice with an Internet Service Provider used by Defendant. Defendant denies his use can legally be defined as infringing as the use clearly fits the four pillars of the Fair Use Doctrine. Defendant denies that a DMCA Takedown was sent to Lulu.com for the book *"Brain Dead."*

14.      Defendant admits to having made the statement of fact in Paragraph 15 of the Complaint on May 15. Despite Plaintiff's apparent belief that this amounted to a declaration of "I dare you to sue me," Defendant was merely stating the policy set forth by the DMCA.

**ANSWER TO INFRINGEMENT VIA BOOKS AND EBOOKS (COUNTS I, II and III)**

15.      All Paragraphs above are hereby incorporated by reference.

16.      Defendant admits to Plaintiff's averment of publishing a blog post titled *"Are You Pondering What I'm Pondering"* on April 14, 2014.

17.    Defendant admits to Plaintiff's averment in Paragraph 18 of his Complaint, and maintains the blog post was published to illustrate the point Defendant was making in the book, and was used under the Fair Use Doctrine. One copy of the e-book was purchased and that was apparently by the Plaintiff.

18.    Defendant admits to the averments of Plaintiff in Paragraph 19 of his Complaint.

19.    Defendant denies that his use of the work was unlawful as it was done under the terms of the Fair Use Doctrine of the US Copyright law. Defendant further denies that Defendant is entitled to anything as a result of this case.

## ANSWER TO COUNT II – "BRAIN DEAD"

20.    All Paragraphs above are incorporated by reference.

21.    Defendant admits to the averments made by Plaintiff in Paragraph 22 of the Complaint. He admits one copy of the book was sold. The book was purchased as a proof copy by the Defendant.

22.    Defendant denies the averments made by Plaintiff in Paragraph 23 of the Complaint. For one thing, the book was published in 2014, not 2104. Defendant is not aware of any Complaints made about infringing material in "Brain Dead." Defendant admits the book was removed from the Lulu.com catalog on April 22, but it was at the demand of the Defendant.

23.    Defendant denies the averments in Paragraph 24 of Plaintiff's Complaint that his use of the work was unlawful as it was done under the terms of the Fair Use Doctrine of the US Copyright law. Defendant further denies that Defendant is entitled to anything as a result of this case.

## CANSWER TO COUNT III – "INTENTIONAL INFLICTION"

24.    All Paragraphs above are incorporated by reference.

25.    Defendant admits to the Plaintiff's averments in Paragraph 26 of the Complaint in part and denies in part. It was actually more like 70 percent of a blog

post that Plaintiff did not own at the time the book was published. Defendant did not "brag" about republishing the portion of the blog entry.

26.    Defendant does not have sufficient information as to the truth of the averments made by Plaintiff in Paragraph 27 of the Complaint.

27.    Defendant denies the averments in Paragraph 28 of Plaintiff's Complaint that his use of the work was unlawful as it was done under the terms of the Fair Use Doctrine of the US Copyright law. Defendant further denies that Defendant is entitled to anything as a result of this case.

### ANSWER TO INFRINBEMENT VIA INTERNET WEBSITES (Counts IV through LVII)

28.    All Paragraphs above are hereby incorporated by reference.

29.    Defendant admits in part and denies in part the averments made by Plaintiff in Paragraph 30 of his Complaint. He admits to using the material. He denies it was infringement as the material was used under the Fair Use Doctrine of the US Copyright Law.

30.    Defendant admits in part and denies in part the averments made by Plaintiff in Table 1 of his Complaint. Defendant admits to using the material. Defendant denies the use was infringement as the material was used in accordance with the Fair Use Doctrine of the US Copyright law.

31.    Defendant denies the averments in Paragraph 32 of Plaintiff's Complaint that Defendant's use of the work was unlawful as it was done under the terms of the Fair Use Doctrine of the US Copyright law. Defendant further denies that Defendant is entitled to anything as a result of this case.

32.    Defendant denies the averments in Paragraph 33 of Plaintiff's Complaint that his use of the work was unlawful as it was done under the terms of the Fair Use Doctrine of the US Copyright law. Defendant further denies that Defendant is entitled to anything as a result of this case.

### ANSWER TO INFRINGEMENT VIA TWITTER (COUNTS LVIII THEOUGH CXXIV)

33.    All Paragraphs above are hereby incorporated by reference.

34.     Defendant admits the averments made by Plaintiff in Paragraph 25 of the Complaint.

35.     Defendant does not have enough information to admit or deny each of the instances of what Plaintiff in Table 2 of his Complaint calls "Infringing Tweets" as Defendant no longer has access to the vast majority of the tweets. Defendant denies "reproducing all or almost all" of each of Plaintiff's works.

36.     Defendant denies the averments in Paragraph 37 of Plaintiff's Complaint that his use of the work was unlawful as it was done under the terms of the Fair Use Doctrine of the US Copyright law. Defendant further denies that Defendant is entitled to anything as a result of this case.

## AFFIRMATIVE DEFENSES

37.     All Paragraphs above are hereby incorporated by reference.

38.     The Complaint fails to state a claim upon which relief can be granted.

39.     The Complaint fails because any use by Defendant as to which Plaintiff holds a copyright interest constitutes a non-infringing fair use and de minimis use under United States law.

40.     In each instance described by Plaintiff in his Complaint, Defendant used enough of Plaintiff's blog posts to illustrate the point Defendant was trying to make about Plaintiff's 18-month campaign of harassment against Defendant.

41.     The Fair Use Doctrine does not set a percentage or "word count" of how much of a person's copyrighted work can be used by another to illustrate a point and prove the truthfulness of what he is writing and to avoid misrepresenting what the Plaintiff said or wrote in his blog.

42.     It is true that Defendant used a significant portion of anonymous blogger "Paul Krendler's" blog entry of April 23, 2014 to illustrate the point that the hatred being generated against Defendant by Plaintiff and his followers had reached a point of near insanity. The portion used by the defendant reads (in part) as follows:

**Old and crazy, fat and demented, Bill Schmalfeldt sat at his curbside reject card table, wishing he could rub two dimes together and find an old desk at a yard sale. But who would help him haul it**

home? Gail? (*Defendant's wife*) She was rarely home anymore. She spent her nights wandering the streets of Elkridge, desperate to get out of the house, out from under his hateful eye. Away from the unrelenting stink of old diapers and sweating feet. She spent the days sleeping off the nights. With the dogs. He stared at a blank page, considering his next post.

....

What's happened to me? God damn it, I'm relevant. Relevant!" He shook a fist at the ceiling, splattering mayonnaise on his monitor.

He absently wiped the stain from his monitor and licked the creamy goo off his finger. He liked creamy, gooey things. For no particular reason, he thought of his lost brother Bob. (*Defendant's identical twin brother, who died of a stroke on March 19, 2004*)

*Oh, God, Bob*, he thought, still sucking his finger clean. *I miss you so.*

He sat back and closed his eyes, remembering fondly the many years of sharing a bedroom   with the Bobber. The playful teasing and wrestling that almost always ended up with grunts  and moans, communicating brotherly love in the special language that only identical twins knew.

...

"Will you ever get away from that GODDAMN COMPUTER?" his wife screeched. She was  blitzed. Again. He looked at the clock above the television. It was only 10:30 in the morning. Christ.

He looked at her sideways, avoiding eye contact. She was wearing a long Army surplus winter coat, so he couldn't tell if she lost another skirt last night. In her right hand she held a nearly empty fifth of bourbon. Always with the bourbon. She had apparently lost her right shoe. The left one, a utilitarian tan orthopedic number, had something wrapped around the ankle, hanging to the floor. Pink granny panties. Sexy.

"Blast you, woman!" he grumbled. "I'll do the writing. You do the drinking. Understood?"

She responded with a derisive laugh and a healthy, wet fart. He hoped it was a fart, anyway. Sometimes he couldn't be sure if he was hearing the right orifice. The awards on the trophy shelf rattled and for a moment Bill feared some might fall from the cheap particle-board  shelf his son gave him on his fiftieth birthday. Some great milestone day that was. He wonders when the last time Peter even thought about him was.

Gail slammed the door and shambled back to the bedroom like a flatulent zombie. She would probably pass out without getting undressed. He hoped she didn't piss the bed again and force another costly trip to Goodwill. He desperately wished this shitty little shack had a second bedroom he could move into. But no, they couldn't afford more than this single-wide  on his paltry disability payments and government pension.

...

For no particular reason, he thought of Bobber again. And Brett. And Neal. Brett and Neal. And Bob. Neal and Bob. Neal and Bob...

When he looked up at the clock again, twenty minutes had passed. How had that happened?  He pulled his finger out of his mouth again. He couldn't remember putting it in.  Dementia? It was all pruned up. There was no mayonnaise.

...

"Will you PLEASE shut the HELL up about your IMAGINARY FRIENDS!! I'm trying to sleep back here!" Gail had stuck her freakishly large head out into the hall. Bill realized he'd been talking to the Horsemen out loud again. It must be the Parkinson's, because he KNEW he wasn't crazy. The Horsemen would take care of anyone who said so.

"Shut up, you besotted trollop. And if you leak on my bed again, I swear I'll—"

"You'll what? Chase me down in your little rolly chair and beat me up? I'd like to see you try!"

Cackling, Gail slammed the bedroom door. Bill looked with fresh worry at his trophy shelf. What would he do if his legacy were destroyed?

...

Behind him, he heard the bedroom door open. He turned and saw Gail, still in her coat, shuffling quickly into the bathroom. "Bluuuuuh..." His wife hurled eighteen hours worth of bourbon, pork rinds and something else into the big white confessional. The aroma, mixed with the stale urine and feet, nearly drove Bill to retch onto his only remaining link to the outside world – the broken down laptop on the card table. Instead he spun quickly to his left and managed to hit the waste basket with the sick. He looked up and saw his wife on the way back to the bedroom. She looked at him with contempt. She used to be pretty, but the bitterness of being with Bill had turned her hard, like petrified wood.

*Grady. He will pay for Hoge's crimes. I know Grady, the sociopath, knows more about the nefarious evil of Hoge than he lets on. If I squeeze that zit, it will pop.* Bill realized, too late, that he just squeezed a zit on his own forehead. He looked at his fingers. Pus clung to his finger and thumb like mayonnaise. Mmmm...mayonnaise. Smooth and creamy and gooey.

For no particular reason, he thought of Bobber. His finger slipped into his mouth again. He barely noticed the taste of pus. He was remembering a pleasantly vile yet familiar smell from his childhood. But why was it mixed with pork rinds and bourbon? And feet?

...

"WILL YOU SHUT YOUR GODDAMN CHOMP HOLE?!?!?" roared the voice of his wife from behind the bedroom door.

"I'm not crazy," Bill repeated. He opened the refrigerator, reached for the open jar of mayonnaise. The smell nearly knocked him from his chair. He rolled to the curtained off cubby they called a pantry and found no fresh jar.

**"WELL, FUUUUUCK ME," he shrieked. "YOU FORGOT THE MAYONNAISE AGAIN, YOU BLEEDING WITCH!"**

**"Not tonight," his wife slurred from the other end of the house.**

**He glared with baleful contempt in his eyes at the last of only three women he had ever touched, none of whom would ever touch him again.**

**For no particular reason, he thought about his twin brother once more.**

**He rolled back to the computer, hungry now for the lost days when he and Bobber would sit on the floor together, sucking down footlongs with mayonnaise. He typed a Paragraph about Hoge. The writing was nothing to write home over, but it was relatively benign. He typed a few more words, adding a little spice to the post. Fifteen minutes later, he came up for air having blown seventy-five words into over five hundred words of spit, bile and projectile vomit onto the page. A wave of fresh hate washed over him, and he clenched his whole body to absorb its full power.**

**He hit the POST button, and felt that old familiar sensation of a job well done.**

**"DAMN IT STRAIGHT TO JESUS!" he hollered as the fresh, deep, earthy stench hit him, and he realized he would have to wake Gail to change his Depends again.**

43.    If Defendant had been allowed access to the comment section on Plaintiff's blog, much of this could have been avoided. But Plaintiff only allows people who agree with him to post on his blog, making it necessary for the Defendant use Plaintiff's blog posts on Twitter or on a blog entry to prove the truthfulness of what he was saying.

44.    Plaintiff had a Peace Order in place against Defendant for one year, not allowing Defendant to contact him and ask his permission to use the material.

45.    In every instance cited by Plaintiff, the material used was used under the Fair Use Doctrine of US Copyright Law, which sets out four factors to be considered in determining whether not a particular use is fair:

a.      **The purpose and character of the use, including whether such use is of commercial nature or is for nonprofit educational purposes.** One sentence from the Plaintiff's blog was used in a book that remains offline after Plaintiff's DMCA takedown. A larger portion was used in a subsequent book, however Plaintiff claims he purchased the "rights" to the anonymous blog entry seven days after the book was published. Since the book was removed the same day he claimed "ownership," he cannot claim damages. The blog and Twitter entries he tags as "infringing" are clearly under the Fair Use Doctrine as not once did Plaintiff ever file a DMCA takedown request with Defendant's Internet Service Provider or with Twitter.

b.      **The nature of the copyrighted work.** In practically every instance, the copyrighted work was used to illustrate a point Defendant was making about the harassment he has suffered at the hands of Plaintiff since February 2013, which will be detailed in the below permissive counterclaim.

c.      **The amount and substantiality of the portion used in relation to the copyrighted work as a whole.** Is Plaintiff claiming each blog post as a separate copyrighted entity? Or is he claiming his entire Hogewash.com blog as a copyrighted entity? In either case, only as much as was needed by Defendant to prove the truthfulness of what he was claiming in his books, blogs and Tweets was used.

d.      **The effect of the use upon the potential market for, or value of, the copyrighted work.** No one to Defendant's knowledge has stopped reading Plaintiff's blog due to Defendant's fair use of material from Plaintiff's blog. If anything, by providing the blog with additional exposure, Defendant has increased the value to Plaintiff of his blog.


### COUNTERCLAIM AGAINST WILLIAM JOHN JOSEPH HOGE III

46.     All Paragraphs above are incorporated by reference.

47.    Counterclaim Plaintiff Schmalfeldt (Schmalfeldt) brings this permissive counterclaim against Counterclaim Defendant Hoge (Hoge) in accordance with Rule 13 of the Federal Rules of Civil Procedure.

48.    This Court has jurisdiction over this action pursuant to 28 USC § 1331 (federal question).

49.    Mr. Schmalfeldt is a retired government employee who has suffered from Parkinson's disease for 14 years since being diagnosed in 2000. He rarely leaves his home due to the increased difficulty he has with movement, walking and balance. He resides with his wife, Gail, and keeps himself busy with blogging and operating an online Internet radio station playing music from the 1920s and 1930s.

50.    Mr. Hoge runs a blog for the entertainment of his readers. It is called "Hogewash.com." The blog consists of daily "Pinky and the Brain" references, attacks on Brett Kimberlin of Bethesda, Maryland (who is currently suing Hoge among several other defendants in state and federal court on a variety of torts related to harassment and R.I.C.O. violations) and attacks on me, in which he encourages his readership to join in.

51.    Hoge has worked with others over time to totally destroy Schmalfeldt's online reputation by publishing lies about Schmalfeldt's previous work as an investigative reporter (freelance) and painting him as an "obsessive stalker".

52.    Hoge rarely refers to Schmalfeldt without mentioning him as "adjudicated cyber stalker." This is a result of Hoge's successful acquisition of a peace order against Schmalfeldt in June 2013.

53.    Hoge secured the peace order on his third attempt by convincing a Carroll County, Maryland, Circuit Court judge that "blocking" Schmalfeldt on Twitter would be the same thing as disabling a portion of his Internet functionality or having to change his telephone number to avoid telemarketers.

54.    In truth, blocking another Twitter user is as simple as pushing a button onscreen that says "block" or "block and report" this user.

55.    Not only did Hoge refuse to block Schmalfeldt, less than one month after obtaining his peace order, he attempted to follow Schmalfeldt's Twitter account. Schmalfeldt blocked Hoge's attempt to follow him.

56.     Hoge has displayed a savage, sadistic streak in his harassment of Schmalfeldt, including three hundred sixty seven (367) misdemeanor criminal charges filed against Schmalfeldt by Hoge in Carroll and Howard Counties. All were ultimately deemed *nolle prosequi* by States' Attorneys.

57.     Hoge uses his blog to harass, defame and libel Schmalfeldt on a daily basis, and he encourages his readers to do the same.

58.     By filing false DMCA takedown requests, Hoge has blocked the publication of two self-published books written by Schmalfeldt, the profits which were meant to be donated to the National Parkinson Foundation, an organization that works toward finding a cure for this disease.

59.     Because of harassment or "trolling" by readers of Hoge's blog, encouraged by Hoge, the National Parkinson Association has asked Schmalfeldt to disassociate himself from their organization.

### COUNTERCLAIM AGAINST CHRIS S. HEATHER

60.     All Paragraphs above are incorporated by reference.

61.     Counterclaim Plaintiff Schmalfeldt (Schmalfeldt) brings this permissive counterclaim against Counterclaim Defendant Heather (Heather) in accordance with Rule 13 of the Federal Rules of Civil Procedure.

62.     This Court has jurisdiction over this action pursuant to 28 USC § 1332 (diversity of citizenship).

63.     On faith and information, Schmalfeldt believes Heather to be unemployed and living with his mother in Racine, Wisconsin.

64.     Schmalfeldt has positively identified Heather as the Twitter entity known as "@Embryriddlealum" (ERA). He also comments on counterclaim defendant Hoge's blog by that name, as well as "Howard Earl."   .

65.     Schmalfeldt identified Heather as ERA when he saw on the Wisconsin Court System Case Search (http://www.wicourts.gov/casesearch.htm) that Chris Heather had filed a domestic abuse case against a woman in 1995. Schmalfeldt contacted ERA via Twitter and asked if it was true that he got "beat up by a girl." ERA denied it. Schmalfeldt told ERA that he had spoken to the woman. ERA replied, "So, you can talk

to ghosts now?" Schmalfeldt never mentioned the woman's name to ERA. The woman Heather filed a domestic abuse case against in 1995 died in Virginia in 2011. Heather/ERA had no answer for this.

66.    Heather has been flaming and trolling Schmalfeldt in one anonymous form or another since 2011.

COUNTERCLAIM AGAINST ANONYMOUS BLOGGER "PAUL KRENDLER"

67.    All Paragraphs above are incorporated by reference.

68.    Counterclaim Plaintiff Schmalfeldt (Schmalfeldt) brings this permissive counterclaim against Counterclaim Defendant Anonymous Blogger "Paul Krendler" ("Krendler") in accordance with Rule 13 of the Federal Rules of Civil Procedure.

69.    This Court has jurisdiction over this action pursuant to 28 USC § 1332 (diversity of citizenship).

70.    "Krendler" is the "author" of a blog called "The Thinking Man's Zombie" which can be seen at http://thinkingmanszombie.wordpress.com/

71.    "Paul Krendler" was the character name of actor Ray Liota in the movie "Hannibal." The header photo on the blog shows a copyrighted image of Ray Liota in that movie being fed a piece of his own brain by Hannibal Lecter.

72.    "Krendler's" blog seems to be little more than an attempt to parody and/or "satirize" the writings of Schmalfeldt.

73.    "Krendler" is the anonymous person from whom Hoge claims to have purchased the portion of the blog that Hoge claims Schmalfeldt infringed on his copyright by publishing in his book *Intentional Infliction.*"

74.    On several attempts by Schmalfeldt, "Krendler" refused to reveal his actual identity.

### FIRST CLAIM FOR RELIEF

#### Malicious Prosecution and Abuse of Process

75.    All Paragraphs above are incorporated by reference.

76.     Hoge inserted himself into an ongoing controversy between Schmalfeldt and several other right wing extremist bloggers after two of these bloggers filed harassment charges against Schmalfeldt in Howard County. All these charges were dismissed.

77.     Hoge claimed, under oath, that the words "Beware the Ides of March" uttered by Schmalfeldt during a Blog Talk Radio Show on or about February 13, 2013, constituted a death threat aimed at him.

78.     After being turned away from the Howard County Court Commissioner, Hoge filed his first three criminal charges against Schmalfeldt in Carroll County District Court on February 15, 2013. He alleged harassment, electronic mail harassment and a charge of unauthorized access to a computer, saying Schmalfeldt had somehow commandeered a computer IP address in Kansas City, MO, using it to send threatening messages to Hoge from that address. These charges were dismissed on April 17, 2013.

79.     On February 21, 2013, Hoge took his first shot at getting a peace order against Schmalfeldt. He was denied in Carroll County District Court on February 28 based on a lack of clear and convincing evidence of prohibited conduct. He immediately appealed.

80.     While waiting on word about his appeal, Hoge requested a second peace order on March 18, 2013. This was also denied on March 25 for lack of clear and convincing evidence of harassment.

81.     Also on March 25, Hoge convinced a Carroll County Court Commissioner that Schmalfeldt had harassed him. This charge was dismissed by the Carroll County States' Attorney on April 17, 2013.

82.     While a temporary peace order was in effect, Hoge convinced a Carroll County Court Commissioner to charge Schmalfeldt with violating the temporary peace order. That charge was also dismissed on April 17, 2013.

83.     On July 8, 2013, Hoge convinced a Carroll County Court Commissioner to file five (5) charges alleging Schmalfeldt had violated the peace order he was eventually awarded in June. These charges were dismissed on Sept. 11, 2013.

84.     On August 5, 2013, Hoge convinced a Carroll County Court Commissioner to file three (3) charges alleging Schmalfeldt had violated the peace order. These charges were also dismissed on Sept. 11, 2013.

85.     On November 8, 2013, Hoge convinced a Carroll County Court Commissioner to file a single charge of electronic mail harassment against Schmalfeldt along with thirty-six (36) charges alleging Schmalfeldt had violated the peace order. The charges were dismissed on January 29, 2014.

86.     On November 12, 2013, Hoge convinced a Carroll County Court Commissioner to file one hundred ninety-eight (198) charges alleging that Schmalfeldt had violated the peace order. An arrest warrant was issued for Schmalfeldt, however when Schmalfeldt was contacted by a deputy with the Carroll County Sheriff's Department and learned what was behind Hoge's charges, the warrant was rescinded and a summons was issued. These charges were dismissed on January 29, 2014.

87.     On November 15, 2013, Hoge convinced a Carroll County Court Commissioner to first file eighty-eight (88) and then an additional twenty-nine (29) charges that Schmalfeldt had violated the peace order. These were also dismissed on January 29, 2014.

88.     On December 9, 2013, Hoge sought and received a six month extension of the original peace order.

89.     On April 1, 2014, apparently having worn out his welcome in his home county, Hoge convinced a Howard County Court Commissioner to file a charge alleging Schmalfeldt had violated the peace order. The charge was dismissed on April 15.

90.     Hoge is well aware of Schmalfeldt's deteriorating health, and is also aware that it is a proven medical fact that the progression of Parkinson's disease is exacerbated by unnecessary stress.

91.     On May 20, 2014, feeling that law enforcement had no mechanism in place to protect a disabled adult from the same kind of cyberbullying that they protect teenagers from, Schmalfeldt filed suit in the US District Court for the District of Maryland alleging several torts, such as harassment, stalking and abuse of process.

92.     On May 21, after a visit with his neurologist, Dr. Stephen Grill of Elkridge, Maryland, Schmalfeldt took his doctor's advice and moved to withdraw his lawsuit from the US District Court for the District of Maryland. The case was ultimately closed on May 29.

93.     On May 21, Schmalfeldt blogged that he had pulled his lawsuit after his doctor warned him that the stress brought on by such a lawsuit might result in his

premature death. "Is it really worth risking your life to get revenge on this guy," Dr. Grill allegedly told Schmalfeldt.

94.     After commenting on his blog that he was aware Schmalfeldt had withdrawn his lawsuit, Hoge filed the instant suit knowing full well that he was drawing Schmalfeldt into a lawsuit that could well end his life due to the exacerbation of his Parkinson's disease caused by stress.

95.     Hoge's constant return to the "well of justice" only to be denied 367 times and his lying about the "difficulty" of blocking Schmalfeldt on Twitter, then getting a peace order extended for an additional six months can only be seen in the light of an obsessed person, abusing the legal process for no other reason than to maliciously prosecute Schmalfeldt.

## SECOND CLAIM FOR RELIEF

### Defamation and Libel

96.     All Paragraphs above are incorporated by reference.

97.     Before running afoul of Hoge, Mr. Schmalfeldt enjoyed a sterling reputation as a writer and reporter. A Google search of his name would have revealed links telling of the books he's written about his voluntary participation in a clinical trial at Vanderbilt University Medical Center. In 2007, Schmalfeldt became one of 15 people in the United States to have undergone experimental Deep Brain Stimulation surgery as part of an experiment to see if patients in the earlier stages of PD could survive the operation and tolerate the long-term placement of the necessary hardware.

98.     Schmalfeldt retired from his position as a GS-13 Writer/Editor with the National Institutes of Health in Bethesda, Maryland due to the advancement of his disease in 2011. He supplemented his income as a freelance investigative reporter.

99.     In May 2012, Schmalfeldt learned of a gang of right wing extremists who were ganging up online to attack an ex-con who was released from prison in 2001 and was doing his best to live an honest life by founding a non-profit organization to educate young people about their rights as voters.

100.   Several of these right wing extremists took great exception to Schmalfeldt's writing about this case and began to attack him personally. He drew the attention of Hoge in September Of 2012.

101.   Since that time, especially since being awarded his peace order, Hoge has seemed sadistically obsessed with Schmalfeldt, with over 1,000 blog posts mentioning him by name in the title.

102.   On June 2, 2014, Hoge directly libeled Schmalfeldt by referring to him as "someone willing to steal intellectual property…" on the website of a Hoge supporter who had just banned Schmalfeldt from defending himself in the comment section of the blog. As Schmalfeldt maintains that the use of the intellectual property in question was Fair Use" under US Copyright law, it is false, defamatory and libelous to paint Schmalfeldt as a thief. http://blubbersuesbloggers.com/yes-it-always-comes-back-to-free-speech/

103.   Heather would rise from Internet dormancy from time to time to hurl an insult at Schmalfeldt and then vanish again. When Heather saw that Schmalfeldt was engaged in a controversy with the right wing extremists, he returned full time, first as @Guntotingteabag, until Schmalfeldt exposed that identity. He resurfaced as "Embryriddlealum" shortly thereafter.

104.   A current Google search of Schmalfeldt will find him defined by Hoge and his right wing extremist friends as "adjudicated cyberstalker," a "deranged cyberstalker, friend of pedophiles, and harasser of children with an anal rape fetish." None of it is true, but the theme is continued on a daily basis by Hoge through his blogs and the comments of his readers. Both Hoge and Heather have contributed to this mountain of libel.

105.   By publishing information identifying Schmalfeldt using the above-mentioned false and defamatory slurs on their blogs, blog comments and Twitter accounts, the counterclaim defendants have irreparably damaged the counterclaim plaintiff's reputation, earning capacity, destroyed his legacy, alienated his friends, and caused companies that Schmalfeldt had done business with in the past to cease association with him.

106.   "Krendler" is the person who wrote the defamatory, obscene, libelous and disgusting filth outlined in paragraph 34. Although truncated for the sake of space, the entire blog entry can be read at http://thinkingmanszombie.wordpress.com/

107.   "Krendler" continues to defame and libel Schmalfeldt by writing items previously blogged by Schmalfeldt, strategically changing words to make Schmalfeldt appear buffoonish, depraved and criminal.

108.   The actions of all three counterclaim defendants can be seen in no other light than to be a conspiracy between right wing extremists to libel, defame, and destroy the reputation of someone they perceived as a political enemy.

### THIRD CLAIM FOR RELIEF
### Harassment and Intentional Infliction of Emotional Distress

109.   All Paragraphs above are incorporated by reference.

110.   One might think after his first 50 or so criminal charges against Schmalfeldt were dismissed, Hoge might have gotten the idea that he wasn't going to successfully put Schmalfeldt in jail. It seems, instead, he decided to either render him totally disabled or dead due to the exacerbation of his Parkinson's disease caused by the stress of 367 criminal charges.

111.   Schmalfeldt alleges Hoge's main reason for filing these criminal charges, originally intended to protect people from non-family members who sought to do them harm, was to harass and intimidate Schmalfeldt, to inflict emotional distress and hasten his death due to Parkinson's disease.

112.   Hoge's attempt to follow Schmalfeldt's Twitter account less than a month after receiving his peace order was a clear attempt to harass Schmalfeldt and goad him into violating the peace order.

113.   His 1,000-plus posts about the evil of Bill Schmalfeldt are clearly meant to inspire his followers into hating Schmalfeldt, and one read of the Hogewash blog in the comments section shows the virulent hatred Hoge's supporters have for Schmalfeldt.

114.   His filing of a copyright suit two days after being informed that Schmalfeldt's neurologist asked Schmalfeldt to withdraw his own lawsuit out of fear that Schmalfeldt would not survive a protracted suit shows a level of reckless endangerment and disregard for life one would find in a sadist.

115.   Nobody can hold a candle to Heather when it comes to online sadism. As far back as 2011, he would send Facebook messages to Schmalfeldt with a picture of a man with a gun to his head and the caption, "The Cure for Parkinson's Disease." Many times in his posting and Tweeting, Heather has adjured Schmalfeldt to "Take the Cure, Shakey!" Heather has Tweeted a variety of violent images to Schmalfeldt of people blowing their heads off with the same "Take the Cure" message.

116.   On faith and information, Schmalfeldt believes Heather to be the anonymous e-mailer "PEMason54" who at one time was a regular commenter on Hoge's blog. "PEMason54" sent direct e-mails to Schmalfeldt threatening to murder his dogs, and to rape his wife in front of him.

117.   Heather gave away his identity as PEMason54 when he posted the following in a blog forum on June 1:

> Please send me a copy of the peace order. My email is
> PEMason54@gailspussytasteslikepenicillinyeastandtuna.edu Thanks, Shakey.

118.   Heather has sent many such messages to my e-mail and through comments to my blog where his e-mail return address offers a query regarding the "taste" of my wife's privates.

119.   The depictions of Schmalfeldt's wife as written by "Krendler" caused her great emotional disturbance and made Schmalfeldt very angry, adding to his stress, furthering the exacerbation of his Parkinson's disease.

120.   "Krendler's" refusal to prove he "sold" the "world book and e-book rights" to that portion of his blog is a source of provocation, designed to anger Schmalfeldt and cause him emotional distress.

121.   The actions of all three counterclaim defendants can be seen in no other light than a conspiracy of right wing extremists to cause as much emotional damage to Schmalfeldt as they could.

**INJURY**

122.   As a direct and proximate result of Hoge's, Heather's and "Krendler's" willful, knowing and intentional acts as set above, Schmalfeldt suffered permanent injury to his reputation, to his health, to his ability to earn income, and an

irreversible increase in the progression of his Parkinson's disease. Having to spend countless hours, days, weeks and months defending against the false narratives, worrying about the 367 criminal charges, which of Hoge's followers would send the next profane e-mail to be seen by Schmalfeldt's wife, whether or not Heather would cross the line from Internet stalker to personal threat, the emotional harassment caused by death threats via e-mail, Twitter and blog comments, the amount of damage done by "Krendler", Heather and Hoge, who dares to sue Schmalfeldt for $690,000 for telling the world what a sadistic harasser Hoge is, has resulted in permanent, irreversible damage that can not be properly measured.

**PUNITIVE DAMAGES**

123.    The actions of Counterclaim Defendants Hoge, Heather and "Krendler" as set forth in this counterclaim demonstrate a remarkable, unbelievable and nearly incomprehensible amount of malice against someone only Hoge has ever met, someone Heather and "Krendler" know by name only, a person they have no legitimate quarrel with. The egregious conduct, insult and perverse gratification and glee seen in Hoge's, "Krendler's" and Heather's writing about Schmalfeldt, celebrating each perceived victory and each new decline in Schmalfeldt's health, the causing of irreversible damage to his health and reputation, requires the most severe punishment this court can deliver. Accordingly, Schmalfeldt requests an award of punitive damages beyond and in excess of those damages necessary to compensate him for the removal of his books from the market place and the irreversible, permanent damage done to his health and reputation.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests the following relief from each counterclaim defendant:

   *       Compensatory Damages and consequential damages of $1,000,000;

   *       Punitive damages as the Court may determine applicable to punish; Hoge's "Krendler's" and Heather's reprehensible and abhorrent conduct to prevent

further occurrence of this behavior and to dissuade others from doing the same;

* An order permanently enjoining Hoge, "Krendler" and Heather from engaging in any contact whatsoever with Schmalfeldt;

* An order requiring Hoge "Krendler" and Heather to apologize to Schmalfeldt on their blogs, Twitter accounts, Facebook accounts blog, and to remove every instance of his mentioning of Schmalfeldt by name, nickname or inference from his blog;

* An order requiring Heather and "Krendler" to reveal all of their various Facebook and Twitter "sock puppet" accounts;

* An order forbidding Hoge's, "Krendler's" and Heather's access to social media for one year;

* For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a permanent injunction that bars Hoge, "Krendler" or Heather from retaliating against Schmalfeldt, his family, his friends or anyone else as punishment for Schmalfeldt filing this counterclaim;

* Costs and fees incurred in the prosecution of this counterclaim; and

* Any further relief as this Court deems just and appropriate.


**JURY DEMAND**


Defendant and Counterclaiming Plaintiff Schmalfeldt hereby demands a jury trial of all issues in this action triable as of right by a jury.


Respectfully Submitted,

June 3, 2014

William M. Schmalfeldt, Pro Se
6636 Washington Blvd., Lot 71
Elkridge, MD 21075
bschmalfeldt@comcast.net
410-206-9637

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Answer and Counterclaim was mailed this 3rd day of June, 2014, to William John Joseph Hoge III, Pro Se, at 20 Ridge Road, Westminster, Maryland 21157 and Chris S. Heather at 2830 Arlington Ave., Upper, Racine, Wisconsin 53403.