FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

US DISTRICT COURT

for the

DISTRICT OF MARYLAND US

(Northern Division)

2014 JUN -5  AM II: 31

CLERK'S OFFICE
AT BALTIMORE

BY_____*Ho.*_____DEPUTY

1

2

3

4

5

6  WILLIAM JOHN JOSEPH HOGE III                    )   Case No.: 1:14-cv-01683-ELH
                                                   )
7          *Plaintiff*                             )
                                                   )
8          v.                                      )   FIRST AMENDED ANSWER OF DEFENDANT,
                                                   )   COUNTERCLAIMS OF WILLIAM M. SCHMALFELDT
9  WILLIAM M. SCHMALFELDT                          )   AND JURY DEMAND
                                                   )
10         *Defendant*                             )

11

12  _____        )
                                                   )
    WILLIAM M. SCHMALFELDT                          )
13                                                 )
           *Counterclaim Plaintiff*                )
14                                                 )
           v.                                      )
15                                                 )
    WILLIAM JOHN JOSEPH HOGE III                    )
16                                                 )
           *Counterclaim Defendant*
17  _____

18  WILLIAM M. SCHMALFELDT      .                   )
                                                   )
19         *Counterclaim Plaintiff*                )
                                                   )
20         v.                                      )
                                                   )
21  "PAUL KRENDLER" (Anonymous Blogger)            )
                                                   )
22         *Counterclaim Defendant*                )
    _____

23

24                                      **ANSWER**

25

26      Defendant William M. Schmalfeldt, in answer to Plaintiff William John Joseph

27  Hoge III's Complaint, denies and admits as follows:

28                                  **NATURE OF THE ACTION**

1

   1.    Admits that this is an action for copyright infringement. Denies

infringing on Plaintiff's copyright as all use falls under "Fair Use Doctrine" of US

Copyright Law, 17 USC § 107

   2.    Denied.

   3.    Denied.

**JURISDICTION**

   4.    Admitted.

   5.    Admitted.

   6.    Admitted.

**PARTIES**

   7.    Admitted.

   8.    Admitted

**ANSWERS TO MR. HOGE'S COMPLAINTS**

   9.    Admitted.

   10.   Admitted

   11.   Defendant does not have enough information to admit or deny.

**ANSWER TO PLAINTIFF'S COMPLAINT ON COPYRIGHT INFRINGEMENTS**

   12.   Admitted.

   13.   Denied.

   14.   Denied.

   15.   Admitted.

1

**ANSWER TO INFRINGEMENT VIA BOOKS AND EBOOKS (COUNTS I, II and III)**

2

3        16.    All Paragraphs above are hereby incorporated by reference.

4        17.    Admitted.

5        18.    Admitted.

6        19.    Admitted.

7        20.    Denied.

8

**ANSWER TO COUNT II – "*BRAIN DEAD*"**

9

10       21.    All Paragraphs above are incorporated by reference.

11       22.    Admitted. The one copy sold was purchased by Defendant.

12       23.    Denied.

13       24.    Denied.

14

15       **CANSWER TO COUNT III – "*INTENTIONAL INFLICTION*"**

16       25.    All Paragraphs above are incorporated by reference.

17       26.    Denied.

18       27.    Admitted that Plaintiff notified CreateSpace. Does not have sufficient

19 information as to whether Plaintiff purchased "the world book and e-book rights."

20       28.    Denied.

21

22       **ANSWER TO INFRINBEMENT VIA INTERNET WEBSITES (Counts IV through LVII)**

23

24       29.    All Paragraphs above are hereby incorporated by reference.

25       30.    Denied.

26       31.    Denied.

27       32.    Denied.

28       33.    Denied.

Answer to Plaintiff's Complaint and Counterclaims - 3

**ANSWER TO INFRINGEMENT VIA TWITTER (COUNTS LVIII THROUGH CXXIV)**

34.    All Paragraphs above are hereby incorporated by reference.

35.    Denied.

36.    Denied.

37.    Denied.

**AFFIRMATIVE DEFENSES**

38.    All Paragraphs above are hereby incorporated by reference.

39.    The Complaint fails to state a claim upon which relief can be granted.

40.    Plaintiff has no standing to file a copyright infringement case based on his claim in Paragraph 11 of the Complaint. US Copyright law states that for a copyright assignment of exclusive license to be a valid transfer, it must be in writing and signed by the owner or his/her duly licensed agent. **(17 USC § 204(a))**.

41.    The alleged assignment of rights happened seven days after the book in question was published. US Copyright Law asserts that as a matter of timing, transfer of only the title in the copyright generally is not sufficient to give the transferee standing to sue for infringements arising before the transfer. **(*See* 3 Copyright § 15.5.1.1)**. In a blog post dated April 30, 2014, Plaintiff wrote: "Mr. Krendler has sold the world book and ebook rights to the web posting in question to me. **He has retained all other rights.**" (Emphasis added.) If "Mr. Krendler" did not assign all of his copyrighted assets to the Plaintiff, then plaintiff has no standing to file an infringement suit for publication that occurred before his "purchase."

42.    Plaintiff cannot claim copyright ownership of comments submitted to his blog. In his own "terms of service" he states: "Posting or attempting to post a comment to the site grants a royalty-free license to *Hogewash!* and its owner to reproduce the comment or any portion of it in any medium without limitation to the place or time of use or publication." His statement in Paragraph 10 of his Complaint contains a serious misstatement of fact when he alleges, "While each commenter retains ownership of his own comment, Mr. Hoge holds the copyright on what amounts to the anthology of his original blog entry and the comment he, as editor, has retained on

his website." The mention of copyright is nowhere to be found in Plaintiff's website "terms of service" page. As the individual commenters retain the ownership, and thus copyright as original authors, Plaintiff has no standing to bring a copyright infringement action against republication of the comments.

43.  Plaintiff has no standing to file a copyright infringement suit for any of the works in which he claims infringement. According to US Copyright Law, registration is a prerequisite for filing an infringement suit. "No action for infringement of the copyright of any United States Work shall be instituted until … registration of the copyright claim has been made in accordance with this title." **(17 USC § 411(a))**

44.  Plaintiff cannot claim copyright ownership of comments submitted to his blog. In his own "terms of service" he states: "Posting or attempting to post a comment to the site grants a royalty-free license to *Hogewash!* and its owner to reproduce the comment or any portion of it in any medium without limitation to the place or time of use or publication." His statement in Paragraph 10 of his Complaint contains a serious misstatement of fact when he alleges, "While each commenter retains ownership of his own comment, Mr. Hoge holds the copyright on what amounts to the anthology of his original blog entry and the comment he, as editor, has retained on his website." The mention of copyright is nowhere to be found in Plaintiff's website "terms of service" page. As the individual commenters retain the ownership, and thus copyright as original authors, Plaintiff has no standing to bring a copyright infringement action against republication of the comments.

45.  As none of Plaintiff's works so claimed in his complaint have been registered with the US Copyright Office, his entire complaint is without merit and should be dismissed with prejudice.

## COUNTERCLAIM AGAINST WILLIAM JOHN JOSEPH HOGE III

46.  All Paragraphs above are incorporated by reference.

47.  Counterclaim Plaintiff Schmalfeldt (Schmalfeldt) brings this permissive counterclaim against Counterclaim Defendant Hoge (Hoge) in accordance with Rule 13 of the Federal Rules of Civil Procedure.

48.     This Court has jurisdiction over this action pursuant to **28 USC § 1331** (federal question).

49.     Mr. Schmalfeldt is a retired government employee who has suffered from Parkinson's disease for 14 years since being diagnosed in 2000. He rarely leaves his home due to the increased difficulty he has with movement, walking and balance. He resides with his wife, Gail, and keeps himself busy with blogging and operating an online Internet radio station playing music from the 1920s and 1930s.

50.     Mr. Hoge runs a blog for the entertainment of his readers. It is called "Hogewash.com." The blog consists of daily "Pinky and the Brain" references, attacks on Brett Kimberlin of Bethesda, Maryland (who is currently suing Hoge among several other defendants in state and federal court on a variety of torts related to harassment and R.I.C.O. violations) and attacks on me, in which he encourages his readership to join in.

51.     Hoge has worked with others over time to totally destroy Schmalfeldt's online reputation by publishing lies about Schmalfeldt's previous work as an investigative reporter (freelance) and painting him as an "obsessive stalker".

52.     Hoge rarely refers to Schmalfeldt without mentioning him as "adjudicated cyber stalker." This is a result of Hoge's successful acquisition of a peace order against Schmalfeldt in June 2013.

53.     Hoge secured the peace order on his third attempt by convincing a Carroll County, Maryland, Circuit Court judge that "blocking" Schmalfeldt on Twitter would be the same thing as disabling a portion of his Internet functionality or having to change his telephone number to avoid telemarketers.

54.     In truth, blocking another Twitter user is as simple as pushing a button onscreen that says "block" or "block and report" this user.

55.     Not only did Hoge refuse to block Schmalfeldt, less than one month after obtaining his peace order, he attempted to follow Schmalfeldt's Twitter account. Schmalfeldt blocked Hoge's attempt to follow him.

56.     Hoge has displayed a savage, sadistic streak in his harassment of Schmalfeldt, including three hundred sixty seven (367) misdemeanor criminal charges filed against Schmalfeldt by Hoge in Carroll and Howard Counties. All were ultimately deemed *nolle prosequi* by States' Attorneys.

57.    Hoge uses his blog to harass, defame and libel Schmalfeldt on a nearly daily basis, and he encourages his readers to do the same.

58.    By filing false DMCA takedown requests, Hoge has blocked the publication of two self-published books written by Schmalfeldt, the profits which were meant to be donated to the National Parkinson Foundation, an organization that works toward finding a cure for this disease.

59.    Because of harassment or "trolling" by readers of Hoge's blog, encouraged by Hoge, the National Parkinson Association has asked Schmalfeldt to disassociate himself from their organization.

## DISMISSAL OF COUNTERCLAIM AGAINST CHRIS S. HEATHER

60.    All Paragraphs above are incorporated by reference.

61.    Counterclaim plaintiff moves the court to dismiss the counterclaim against Chris S. Heather as raised in his original answer and counterclaim.

## COUNTERCLAIM AGAINST ANONYMOUS BLOGGER "PAUL KRENDLER"

62.    All Paragraphs above are incorporated by reference.

63.    Counterclaim Plaintiff Schmalfeldt (Schmalfeldt) brings this permissive counterclaim against Counterclaim Defendant Anonymous Blogger "Paul Krendler" ("Krendler") in accordance with Rule 13 of the Federal Rules of Civil Procedure.

64.    This Court has jurisdiction over this action pursuant to 28 USC § 1332 (diversity of citizenship).

65.    "Krendler" is the "author" of a blog called "The Thinking Man's Zombie" which can be seen at http://thinkingmanszombie.wordpress.com/

66.    "Paul Krendler" was the character name of actor Ray Liota in the movie "Hannibal." The header photo on the blog shows a copyrighted image of Ray Liota in that movie being fed a piece of his own brain by Hannibal Lecter.

67.    "Krendler's" blog seems to be little more than an attempt to parody and/or "satirize" the writings of Schmalfeldt.

68.    "Krendler" is the anonymous person from whom Hoge claims to have purchased the portion of the blog that Hoge claims Schmalfeldt infringed on his copyright by publishing in his book "*Intentional Infliction.*"

69.    On several attempts by Schmalfeldt, "Krendler" refused to reveal his actual identity.

**FIRST CLAIM FOR RELIEF**
**Malicious Prosecution and Abuse of Process**

70.    All Paragraphs above are incorporated by reference.

71.    Hoge inserted himself into an ongoing controversy between Schmalfeldt and several other right wing extremist bloggers after two of these bloggers filed harassment charges against Schmalfeldt in Howard County. All these charges were dismissed.

72.    Hoge claimed, under oath, that the words "Beware the Ides of March" uttered by Schmalfeldt during a Blog Talk Radio Show on or about February 13, 2013, constituted a death threat aimed at him.

73.    After being turned away from the Howard County Court Commissioner, Hoge filed his first three criminal charges against Schmalfeldt in Carroll County District Court on February 15, 2013. He alleged harassment, electronic mail harassment and a charge of unauthorized access to a computer, saying Schmalfeldt had somehow commandeered a computer IP address in Kansas City, MO, using it to send threatening messages to Hoge from that address. These charges were dismissed on April 17, 2013.

74.    On February 21, 2013, Hoge took his first shot at getting a peace order against Schmalfeldt. He was denied in Carroll County District Court on February 28 based on a lack of clear and convincing evidence of prohibited conduct. He immediately appealed.

75.    While waiting on word about his appeal, Hoge requested a second peace order on March 18, 2013. This was also denied on March 25 for lack of clear and convincing evidence of harassment.

76.    Also on March 25, Hoge convinced a Carroll County Court Commissioner that Schmalfeldt had harassed him. This charge was dismissed by the Carroll County States' Attorney on April 17, 2013.

77.    While a temporary peace order was in effect, Hoge convinced a Carroll County Court Commissioner to charge Schmalfeldt with violating the temporary peace order. That charge was also dismissed on April 17, 2013.

78.    On July 8, 2013, Hoge convinced a Carroll County Court Commissioner to file five (5) charges alleging Schmalfeldt had violated the peace order he was eventually awarded in June. These charges were dismissed on Sept. 11, 2013.

79.    On August 5, 2013, Hoge convinced a Carroll County Court Commissioner to file three (3) charges alleging Schmalfeldt had violated the peace order. These charges were also dismissed on Sept. 11, 2013.

80.    On November 8, 2013, Hoge convinced a Carroll County Court Commissioner to file a single charge of electronic mail harassment against Schmalfeldt along with thirty-six (36) charges alleging Schmalfeldt had violated the peace order. The charges were dismissed on January 29, 2014.

81.    On November 12, 2013, Hoge convinced a Carroll County Court Commissioner to file one hundred ninety-eight (198) charges alleging that Schmalfeldt had violated the peace order. An arrest warrant was issued for Schmalfeldt, however when Schmalfeldt was contacted by a deputy with the Carroll County Sheriff's Department and learned what was behind Hoge's charges, the warrant was rescinded and a summons was issued. These charges were dismissed on January 29, 2014.

82.    On November 15, 2013, Hoge convinced a Carroll County Court Commissioner to first file eighty-eight (88) and then an additional twenty-nine (29) charges that Schmalfeldt had violated the peace order. These were also dismissed on January 29, 2014.

83.    On December 9, 2013, Hoge sought and received a six-month extension of the original peace order.

84.    On April 1, 2014, apparently having worn out his welcome in his home county, Hoge convinced a Howard County Court Commissioner to file a charge alleging Schmalfeldt had violated the peace order. The charge was dismissed on April 15.

85.    Hoge is well aware of Schmalfeldt's deteriorating health, and is also aware that it is a proven medical fact that the progression of Parkinson's disease is exacerbated by unnecessary stress.

86.    On May 20, 2014, feeling that law enforcement had no mechanism in place to protect a disabled adult from the same kind of cyber-bullying that they protect teenagers from, Schmalfeldt filed suit in the US District Court for the District of Maryland alleging several torts, such as harassment, stalking and abuse of process.

87.    On May 21, after a visit with his neurologist, Dr. Stephen Grill of Elkridge, Maryland, Schmalfeldt took his doctor's advice and moved to withdraw his lawsuit from the US District Court for the District of Maryland. The case was ultimately closed on May 29.

88.    On May 21, Schmalfeldt blogged that he had pulled his lawsuit after his doctor warned him that the stress brought on by such a lawsuit might result in his premature death. "Is it really worth risking your life to get revenge on this guy," Dr. Grill allegedly told Schmalfeldt.

89.    After commenting on his blog that he was aware Schmalfeldt had withdrawn his lawsuit, Hoge filed the instant suit knowing full well that he was drawing Schmalfeldt into a lawsuit that could well end his life due to the exacerbation of his Parkinson's disease caused by stress.

90.    Hoge's constant return to the "well of justice" only to be denied 367 times and his lying about the "difficulty" of blocking Schmalfeldt on Twitter, then getting a peace order extended for an additional six months can only be seen in the light of an obsessed person, abusing the legal process for no other reason than to maliciously prosecute Schmalfeldt.

### SECOND CLAIM FOR RELIEF
#### Defamation and Libel

91.    All Paragraphs above are incorporated by reference.

92.    Before running afoul of Hoge, Mr. Schmalfeldt enjoyed a sterling reputation as a writer and reporter. A Google search of his name would have revealed links telling of the books he's written about his voluntary participation in a clinical trial at Vanderbilt University Medical Center. In 2007, Schmalfeldt became one of 15 people in the United States to have undergone experimental Deep Brain Stimulation surgery as part of an experiment to see if patients in the earlier stages

of PD could survive the operation and tolerate the long-term placement of the necessary hardware.

93.     Schmalfeldt retired from his position as a GS-13 Writer/Editor with the National Institutes of Health in Bethesda, Maryland due to the advancement of his disease in 2011. He supplemented his income as a freelance investigative reporter.

94.     In May 2012, Schmalfeldt learned of a gang of right wing extremists who were ganging up online to attack an ex-con who was released from prison in 2001 and was doing his best to live an honest life by founding a non-profit organization to educate young people about their rights as voters.

95.     Several of these right wing extremists took great exception to Schmalfeldt's writing about this case and began to attack him personally. He drew the attention of Hoge in September Of 2012.

96.     Since that time, especially since being awarded his peace order, Hoge has seemed sadistically obsessed with Schmalfeldt, with over 1,000 blog posts mentioning him by name in the title.

97.     On June 2, 2014, Hoge directly libeled Schmalfeldt by referring to him as "someone willing to steal intellectual property…" on the website of a Hoge supporter who had just banned Schmalfeldt from defending himself in the comment section of the blog. As Schmalfeldt maintains that the use of the intellectual property in question was Fair Use" under US Copyright law, it is false, defamatory and libelous to paint Schmalfeldt as a thief. http://blubbersuesbloggers.com/yes-it-always-comes-back-to-free-speech/

98.     A current Google search of Schmalfeldt will find him defined by Hoge and his right wing extremist friends as "adjudicated cyberstalker," a "deranged cyberstalker, friend of pedophiles, and harasser of children with an anal rape fetish." None of it is true, but the theme is continued on a daily basis by Hoge through his blogs and the comments of his readers.

99.     By publishing information identifying Schmalfeldt using the above-mentioned false and defamatory slurs on their blogs, blog comments and Twitter accounts, the counterclaim defendants have irreparably damaged the counterclaim plaintiff's reputation, earning capacity, destroyed his legacy, alienated his friends,

and caused companies that Schmalfeldt had done business with in the past to cease association with him.

100.   "Krendler" continues to defame and libel Schmalfeldt by writing items previously blogged by Schmalfeldt, strategically changing words to make Schmalfeldt appear buffoonish, depraved and criminal.

101.   The actions of all three counterclaim defendants can be seen in no other light than to be a conspiracy between right wing extremists to libel, defame, and destroy the reputation of someone they perceived as a political enemy.

### THIRD CLAIM FOR RELIEF
### Harassment and Intentional Infliction of Emotional Distress

102.   All Paragraphs above are incorporated by reference.

103.   One might think after his first 50 or so criminal charges against Schmalfeldt were dismissed, Hoge might have gotten the idea that he wasn't going to successfully put Schmalfeldt in jail. It seems, instead, he decided to either render him totally disabled or dead due to the exacerbation of his Parkinson's disease caused by the stress of 367 criminal charges.

104.   Schmalfeldt alleges Hoge's main reason for filing these criminal charges, originally intended to protect people from non-family members who sought to do them harm, was to harass and intimidate Schmalfeldt, to inflict emotional distress and hasten his death due to Parkinson's disease.

105.   Hoge's attempt to follow Schmalfeldt's Twitter account less than a month after receiving his peace order was a clear attempt to harass Schmalfeldt and goad him into violating the peace order.

106.   His 1,000-plus posts about "the evil of Bill Schmalfeldt" are clearly meant to inspire his followers into hating Schmalfeldt, and one read of the Hogewash blog in the comments section shows the virulent hatred Hoge's supporters have for Schmalfeldt.

107.   His filing of a copyright suit two days after being informed that Schmalfeldt's neurologist asked Schmalfeldt to withdraw his own lawsuit out of fear that Schmalfeldt would not survive a protracted suit shows a level of reckless endangerment and disregard for life one would find in a sadist.

108.    The depictions of Schmalfeldt's wife as written by "Krendler" caused her great emotional disturbance and made Schmalfeldt very angry, adding to his stress, furthering the exacerbation of his Parkinson's disease.

109.    "Krendler's" refusal to prove he "sold" the "world book and e-book rights" to that portion of his blog is a source of provocation, designed to anger Schmalfeldt and cause him emotional distress.

110.    The actions of both counterclaim defendants can be seen in no other light than a conspiracy of right wing extremists to cause as much emotional damage to Schmalfeldt as they could.

## INJURY

111.    As a direct and proximate result of Hoge's and "Krendler's" willful, knowing and intentional acts as set above, Schmalfeldt suffered permanent injury to his reputation, to his health, to his ability to earn income, and an irreversible increase in the progression of his Parkinson's disease. Having to spend countless hours, days, weeks and months defending against the false narratives, worrying about the 367 criminal charges, which of Hoge's followers would send the next profane e-mail to be seen by Schmalfeldt's wife, the emotional harassment caused by death threats via e-mail, Twitter and blog comments, the amount of damage done by "Krendler" and Hoge, who dares to sue Schmalfeldt for $690,000 for telling the world what a sadistic harasser Hoge is, has resulted in permanent, irreversible damage that can not be properly measured.

## PUNITIVE DAMAGES

112.    The actions of Counterclaim Defendants Hoge and "Krendler" as set forth in this counterclaim demonstrate a remarkable, unbelievable and nearly incomprehensible amount of malice against someone only Hoge has ever met, someone "Krendler" knows by name only, a person they have no legitimate quarrel with. The egregious conduct, insult and perverse gratification and glee seen in Hoge's, "Krendler's" writing about Schmalfeldt, celebrating each perceived victory and each

new decline in Schmalfeldt's health, the causing of irreversible damage to his health

and reputation, requires the most severe punishment this court can deliver.

Accordingly, Schmalfeldt requests an award of punitive damages beyond and in excess of

those damages necessary to compensate him for the removal of his books from the market

place and the irreversible, permanent damage done to his health and reputation.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff requests the following relief from each counterclaim defendant:

* Compensatory Damages and consequential damages of $1,000,000;

* Punitive damages as the Court may determine applicable to punish; Hoge's

and "Krendler's" reprehensible and abhorrent conduct to prevent further

occurrence of this behavior and to dissuade others from doing the same;

* An order permanently enjoining Hoge and "Krendler";

* An order requiring Hoge and "Krendler to apologize to Schmalfeldt on

their blogs, Twitter accounts, Facebook accounts blog, and to remove

every instance of his mentioning of Schmalfeldt by name, nickname or

inference from his blog;

* An order requiring "Krendler" to reveal all of his various Facebook and

Twitter "sock puppet" accounts;

* An order forbidding Hoge's, and "Krendler's";

* For equitable relief as appropriate pursuant to applicable law, including

but not limited to issuing a permanent injunction that bars Hoge or

"Krendler" from retaliating against Schmalfeldt, his family, his friends

or anyone else as punishment for Schmalfeldt filing this counterclaim;

* Costs and fees incurred in the prosecution of this counterclaim; and

* Any further relief as this Court deems just and appropriate.

**JURY DEMAND**

Answer to Plaintiff's Complaint and Counterclaims - 14

Defendant and Counterclaiming Plaintiff Schmalfeldt hereby demands a jury trial of all issues in this action triable as of right by a jury.

Respectfully Submitted,

June 5, 2014

William M. Schmalfeldt, Pro Se
6636 Washington Blvd., Lot 71
Elkridge, MD 21075
bschmalfeldt@comcast.net
410-206-9637

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Answer and Counterclaim was mailed this 5rd day of June, 2014, to William John Joseph Hoge III, Pro Se, at 20 Ridge Road, Westminster, Maryland 21157.