U.S. DISTRICT COURT FOR THE
DISTRICT OF MARYLAND
(Northern Division)

_____ FILED   _____ ENTERED
_____ LODGED   _____ RECEIVED

JUL 1 8 2014

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| WILLIAM JOHN JOSEPH HOGE III | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) Case Number 1:14-cv-01683-ELH |
| | ) |
| WILLIAM M. SCHMALFELDT | ) |
| | ) |
| *Defendant.* | ) |
| _____ | ) |
| WILLIAM M. SCHMALFELDT | ) |
| | ) |
| *Counterclaim Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| WILLIAM JOHN JOSEPH HOGE III | ) |
| | ) |
| *Counterclaim Defendant.* | ) |
| _____ | ) |
| WILLIAM M. SCHMALFELDT | ) |
| | ) |
| *Counterclaim Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| "PAUL KRENDLER" Anonymous Blogger | ) |
| | ) |
| *Counterclaim Defendant.* | ) |
| _____ | ) |

## DEFENDANT AND COUNTERCLAIM PLAINTIFF WILLIAM M. SCHMALFELDT'S FIRST AMENDED ANSWER TO PLAINTIFF HOGE'S AMENDED COMPLAINT, AND SECOND AMENDED COUNTERCLAIM

### FIRST AMENDED ANSWER

Defendant William M. Schmalfeldt, in his first amended Answer to Plaintiff William John Joseph Hoge III's Amended Complaint, denies and avers as follows:

## NATURE OF THE ACTION

1.      Admits this is an action for copyright infringement against Defendant. Denies unauthorized reproduction, preparation of derivative works, distribution and public display of Mr. Hoge's copyrighted works. Admits Hoge seeks preliminary and permanent injunctive relief, but denies any damage to Hoge as there was no unauthorized infringing activity by Defendant.

2.      Admits the takedown notices. Denies Defendant's behavior was unlawful or infringing. Denies a continuation of unlawful, infringing activities.

3.      Denied.

## JURISDICTION AND VENUE

4.     Admits.

5.     Admits.

6.     Admits

## THE PARTIES

7.     Admits

8.     Admits while objecting to the raising of the Peace Order as it is irrelevant to this case and indicative of the Plaintiff's vexatious, vindictive nature that he would seek to prejudice this Court by mentioning this unrelated event.

### MR. HOGE'S COPYRIGHTS

9.     Admits.

10.     Admits as to Plaintiff allowing commenters who agree with him to post comments. Denies that Plaintiff screens comments for editorial suitability. Denies that Plaintiff deletes obscene or grossly off-topic comments. Denies that Plaintiff can claim copyright ownership of comments.

11.     Defendant does not have sufficient information to deny or admit to this assertion.

12.     Admits that Plaintiff filed applications for certificates of registration to the US Copyright office for himself and Counterclaim Defendant "Paul Krendler" on June 5 and 7, which happen to be seven and nine days after he initiated the instant case.

### COPYRIGHT INFRINGEMENT

13.     Denied.

14.     Denied

15.     Admits to Plaintiff's sending of DMCA takedown notices.

16.    Admits.

## INFRINGEMENT VIA BOOKS AND EBOOKS (COUNTS I, II, AND III)

### Count I – My Slow, Journalistic Death

17.    All paragraphs above are hereby incorporated by reference.

18.    Admits

19.    Denied.

20.    Denies content was infringing.

21.    Denied.

### COUNT II – Brain Dead

22.    All paragraphs above are hereby incorporated by reference.

23.    Admits.

24.    Admits.

25.    Denies.

### COUNT III – Intentional Infliction

26.    All paragraphs above are hereby incorporated by reference.

27.    Denied.

28.     Defendant does not have sufficient information to admit or deny whether or not Plaintiff purchased the world book and e-book rights to the work.

29.     Denied.

## INFRINGEMENT VIA INTERNET WEBSITES (Counts IV Through XXV)

30.     All paragraphs above are hereby incorporated by reference

31.     Count IV was dropped by request of Plaintiff on June 27, 2014. The rest of the allegation is denied.

32.     Denied.

33.     Denied.

34.     Denied.

## INFRINGEMENT VIA TWITTER (Counts XXVI Through XXXVII)

35.     All paragraphs above are hereby incorporated by reference.

36.     Denied.

37.     Denied.

38.     Denied.

## STATEMENT REGARDING DROPPED COUNTS

39.     Denied as to Plaintiff's reasons for dropping all counts relating to items published before March 1, 2014.

## EQUITABLE DEFENSES

40.     All paragraphs above are hereby incorporated by reference.

41.     Plaintiff comes to this lawsuit with Unclean Hands, in as much as he is guilty of the exact same practices for which he wrongly accuses Defendant in this suit.

42.     Defendant alleges Plaintiff engaged in Copyright Misuse "in a manner violative of the public policy embodied in the grant of copyright." (See *Lasercomb Am. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 520 (9th Cir. 1997) (recognizing misuse where copyright is used to "secure an exclusive right or limited monopoly not granted by the Copyright Office"). This Copyright Misuse comes about by Plaintiff's selective enforcement of his former and current Terms of Service for use of his blog material. If you are someone he agrees with, you are allowed to publish entire Hogewash blog posts with nary a complaint. If you are someone Plaintiff disagrees with, you are sued for using a single line from his blog in one of your books.

43. Defendant claims Plaintiff has committed Fraud on the U.S. Copyright Office by claiming copyright in material he does not own, such as much of the material he copied and pasted from Defendant's "Patriot-Ombudsman" blog that he now has the audacity to claim this Defendant has infringed his copyright by reusing.

By claiming sole ownership of the material he registered one week after initiating

the instant suit, Plaintiff demonstrated the sort of Fraud on the Copyright Office

alleged in *Steele v. Bell*, 37 Wn. App. 337, 679 P.2d 964 :

> The Copyright Office has full authority to cancel copyrights that have been
> registered to work that is not "copyrightable." 37 C.F.R. 201.7. Steele's counsel
> cites to Psychopathic Records, Inc. v. Anderson, No. 08 Civ. 15034,2010 WL
> 4683470 (E.D. Mich. Nov. 10,2010), and Willsea v. Theis, No. 98 Civ. 6773
> (BSJ), 1999 WL 595629 (S.D.N.Y. Aug. 5, 1999), for the Anderson, No. 08 Civ.
> 15034,2010 WL 4683470 (E.D. Mich. Nov. 10,2010), and Willsea v. Theis, No.
> 98 Civ. 6773 (BSJ), 1999 WL 595629 (S.D.N.Y. Aug. 5, 1999), for the
> proposition that district courts may nullify copyright registrations before the
> Copyright Office "if the copyrighted material was not original and therefore
> not subject to copyright protection in the first place." (Mem. of Law at 10.)
> (*Id.* at p.12)

## AFFIRMATIVE DEFENSES

44.     All paragraphs above are hereby incorporated by reference.

45.     Plaintiff fails to state a claim upon which relief can be granted. His

filing of copyright applications seven and nine days after initiating the instant case

renders this entire action moot. Although there is controversy in the Courts about

whether the application approach or the registration approach is the appropriate

standard by which a plaintiff can file a copyright infringement suit, no court has

ruled that a plaintiff can succeed in a copyright infringement suit instituted before

applying for copyright applications for the material he claims has been infringed.

> Except for an action brought for a violation of the rights of the author under
> section 106A (a), and subject to the provisions of subsection (b), **no civil
> action for infringement of the copyright in any United States work shall
> be instituted until preregistration or registration of the copyright claim
> has been made in accordance with this title.** In any case, however, where
> the deposit, application, and fee required for registration have been
> delivered to the Copyright Office in proper form and registration has been
> refused, the applicant is entitled to institute a civil action for infringement if
> notice thereof, with a copy of the complaint, is served on the Register of
> Copyrights. The Register may, at his or her option, become a party to the

action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue. 17 USC 411(a) (Emphasis Added)

46.     In the absence of a properly filed application for copyright, filed prior to instituting a Copyright Infringement Case in a U.S. District Court, any other defense Defendant could offer, such as Fair Use, and the permission granted by Hoge's previous Terms of Service is moot and a waste of this Court's time.

## SECOND AMENDED COUNTERCLAIM AGAINST WILLIAM JOHN JOSEPH HOGE III

**47.**     All paragraphs above are hereby incorporated by reference.

**48.**     Counterclaim Plaintiff Schmalfeldt brings this permissive counterclaim against Counterclaim Defendant Hoge in accordance with Rule 13 of the Federal Rules of Civil Procedure.

**49.**     This court has jurisdiction over this action pursuant to 28 USC § 1331 (Federal Question) since the counterclaim arises from the Copyright Infringement claim brought by Hoge.

## SECOND AMENDED COUNTERCLAIM AGAINST ANONYMOUS BLOGGER "PAUL KRENDLER"

50.     All paragraphs above are hereby incorporated by reference.

51.     Counterclaim Plaintiff Schmalfeldt brings this permissive counterclaim against Counterclaim Defendant "Krendler" in accordance with Rule 13 of the Federal Rules of Civil Procedure.

52.     This court has jurisdiction over this action pursuant to 28 USC § 1332 (Diversity of Citizenship) since "Krendler's" address is not known at this time.

53.     "Krendler" is the "author" of a blog called "The Thinking Man's Zombie.

54.     The pseudonym "Paul Krendler" was the name of a character in the movie "Hannibal," played by Ray Liotta. The header photo of the blog is a copyrighted photo from the movie in which the Krendler character is being fed a piece of his own brain by Hannibal Lecter.

55.     Krendler's blog seems to be little more than a vehicle for defamation and libel directed at the Counterclaim Plaintiff.

56.     Krendler is the anonymous person that Counterclaim Defendant Hoge claims to have purchased the "world book and ebook rights" to a blog entry that Hoge claims Schmalfeldt "infringed" in his book, "Intentional Infliction."

57.     The Counterclaim Plaintiff has yet to see documentation of a valid, signed, legal transfer of copyright from "Krendler" to Hoge, yet Hoge filed an application with the US Copyright Office for the "Krendler" blog post on June 7, 2014 – nine days after instituting the instant suit.

9

## FIRST CLAIM FOR RELIEF

### Fraudulent Copyright Notice

58.     All paragraphs above are hereby incorporated by reference.

59.     Counterclaim Defendant Hoge is in violation of 17 USC § 506(c):

> **Any person who, with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any article bearing such notice or words that such person knows to be false, shall be fined not more than $2,500.** *(Id.)*

60.     Hoge's fraudulent intent can be demonstrated by his need to punish Schmalfeldt, using the courts as a weapon. Dozens of right wing bloggers use entire posts from Hogewash every day without so much as a grumble from Hoge. In fact, Hoge's Terms of Service for Hogewash used to specifically allow anyone to use material from Hogewash, under certain terms which were met by the Counterclaim Plaintiff. The fact that Hoge changed his terms of service on the very afternoon of the Preliminary Injunction hearing in this Court on June 27, 2014, in order to specifically exclude Counterclaim Plaintiff and a few other progressive bloggers is telling.

## SECOND CLAIM FOR RELIEF

### False Representation

61.     All paragraphs above are hereby incorporated by reference.

10

62.     Hoge is in violation of 17 USC § 506(e):

**Any person who knowingly makes a false representation of a
material fact in the application for copyright registration
provided for by section 409, or in any written statement filed in
connection with the application, shall be fined not more than
$2,500.** *(Id.)*

63.     The fact that Hoge knowingly made false representation of a material

fact in the application for copyright registration is demonstrated by the fact that he

filed Form G/DN for three months' worth of Hogewash blogs, March, April and May

2014. He registered as a "daily newsletter," although the US Copyright Act does not

support his claim. A "daily newsletter" must be a "work for made for hire." (17 USC §

101).  Specifically:

> (1) a work prepared by an employee within the scope of his or her
> employment; or
>
> (2) a work specially ordered or commissioned for use as a
> contribution to a collective work, as a part of a motion picture or
> other audiovisual work, as a translation, as a supplementary work, as
> a compilation, as an instructional text, as a test, as answer material for
> a test, or as an atlas, if the parties expressly agree in a written
> instrument signed by them that the work shall be considered a work
> made for hire. For the purpose of the foregoing sentence, a
> "supplementary work" is a work prepared for a publication as a
> secondary adjunct to a work by another author for the purpose of
> introducing, concluding, illustrating, explaining, revising, commenting
> upon, or assisting in the use of the other work, such as forewords,
> afterwords, pictorial illustrations, maps, charts, tables, editorial notes,
> musical arrangements, answer material for tests, bibliographies,
> appendixes, and indexes; and an "instructional text" is a literary,
> pictorial, or graphic work prepared for publication and with the
> purpose of use in systematic instructional activities. *(Id.)*

64.     Hogewash, as described by Hoge, is a general interest blog. To

qualify for registration as a "daily newsletter," it must *"contain news or information*

of interest chiefly to a special group (for example, trade and professional associations, corporate house organs, schools, colleges, and churches)." (37 CFR Part 202 Section 202.3 (8)(i). In filling out form G/DN, Hoge needed to answer both of these points in the affirmative, which he knows is a misrepresentation of what his blog is and does.

### THIRD CLAIM FOR RELIEF

### Defamation

65.     All paragraphs above are hereby incorporated by reference.

66.     Any statement, whether written or oral, that injures a third party's reputation. See, e.g. Buckley v. Fitzsimmons, 509 U.S. 259 (1993). The tort of defamation includes both libel and slander.

67.     To establish a prima facie case of defamation, four elements are generally required: a false statement purporting to be fact concerning another person or entity; publication or communication of that statement to a third person; fault on the part of the person making the statement amounting to intent or at least negligence; and some harm caused to the person or entity who is the subject of the statement.

68.     Both Counterclaim Defendants are clearly guilty of the civil tort of Defamation, as defined in 28 U.S. Code § 4101(1):

> The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person. *(Id.)*

## FOURTH CLAIM FOR RELIEF

### False Light Invasion of Privacy

69.     In his "Thinking Man's Zombie" post of April 23, 2013, Counterclaim

Defendant "Krendler" wrote what he called a "parody" in which he mentioned

Counterclaim Plaintiff and his wife by name, living conditions and city of residence.

> **"Old and crazy, fat and demented, Bill Schmalfeldt sat at his
> curbside reject card table, wishing he could rub two dimes
> together and find an old desk at a yard sale. But who would help
> him haul it home? Gail? She was rarely home anymore. She spent
> her nights wandering the streets of Elkridge, desperate to get out
> of the house, out from under his hateful eye. Away from the
> unrelenting stink of old diapers and sweating feet. She spent the
> days sleeping off the nights. With the dogs. He stared at a blank
> page, considering his next post.
> (http://thinkingmanszombie.wordpress.com/2014/04/23/we-
> can-write-whatever-we-want-right/)**

This depiction in and of itself places the Counterclaim Plaintiff and his wife in

a false, defamatory light. My wife is not a drinker, nor does she wander the streets. I

do not wear "adult diapers" for my Parkinson's disease.

70.     No one was safe from "Krendler's" defamation. Not even my late

identical twin brother who died of a stroke in 2004.

> **Bill remembered those happy days, and dropped his face to his
> hands, sobbing.**
>
> **"What's happened to me? God damn it, I'm relevant. Relevant!"
> He shook a fist at the ceiling, splattering mayonnaise on his
> monitor.**

> He absently wiped the stain from his monitor and licked the creamy goo off his finger. He liked creamy, gooey things. For no particular reason, he thought of his lost brother Bob.
>
> *Oh, God, Bob,* he thought, still sucking his finger clean. *I miss you so.*
>
> He sat back and closed his eyes, remembering fondly the many years of sharing a bedroom with the Bobber. The playful teasing and wrestling that almost always ended up with grunts and moans, communicating brotherly love in the special language that only identical twins knew. *(Id.)*

71.    My wife and I will celebrate our 25th wedding anniversary on

November 17. She has done nothing to deserve this sort of treatment from

"Krendler."

> He looked at her sideways, avoiding eye contact. She was wearing a long Army surplus winter coat, so he couldn't tell if she lost another skirt last night. In her right hand she held a nearly empty fifth of bourbon. Always with the bourbon. She had apparently lost her right shoe. The left one, a utilitarian tan orthopedic number, had something wrapped around the ankle, hanging to the floor. Pink granny panties. Sexy.
>
> "Blast you, woman!" he grumbled. "I'll do the writing. You do the drinking. Understood?"
>
> She responded with a derisive laugh and a healthy, wet fart. He hoped it was a fart, anyway. Sometimes he couldn't be sure if he was hearing the right orifice. The awards on the trophy shelf rattled and for a moment Bill feared some might fall from the cheap particle-board shelf his son gave him on his fiftieth birthday. Some great milestone day that was. He wonders when the last time Peter even thought about him was.
>
> Gail slammed the door and shambled back to the bedroom like a flatulent zombie. She would probably pass out without getting undressed. He hoped she didn't piss the bed again and force another costly trip to Goodwill. He desperately wished this shitty little shack had a second bedroom he could move into. But no, they couldn't afford more than this single-wide on his paltry disability payments and government pension. *(Id.)*

14

72.     The fact that this was written with malice is demonstrated by the other entries in "Krendler's blog: His ode to the joy he gets from "Malodorous Mockery," the not-so-funny cartoons depicting the Counterclaim Plaintiff in all manner of foolish situations. The fact that he was so ashamed of this work that he sought to copyright it anonymously until, out of nowhere, Counterclaim Defendant WJJ Hoge III just "happened" to stumble onto "Krendler's" Twitter account (@brainsrfood) to offer advice. Within an hour, Hoge had the "world book and ebook rights" to this piece of filth, which I had published in my book "Intentional Infliction" to demonstrate the depths of depravity Hoge's followers will sink to in order to defame and libel the Counterclaim Plaintiff.

73.     Counterclaim Defendant Hoge is also guilty of false light invasion of privacy in his writing about Schmalfeldt. This headline from a July 14, 2014 Hogewash post, for instance.

### #BillSchmalfeldt Files Fraudulent DMCA Takedown Notice

http://hogewash.com/2014/07/14/billschmalfeldt-files-fraudulent-dmca-takedown-notice/

74.     While it is true that Schmalfeldt sent WordPress.com a DMCA notice regarding Hoge's continued taking of material from my blogs without permission, there was nothing "fraudulent" about it, and WordPress ended up taking down the wrong post anyway. Instead of removing the infringing posts, WordPress took it upon themselves to remove 43 of 70 NASA posts that Hoge had published and had attempted to claim copyright to in his Copyright Application for the March, April and May "issues" of Hogewash. When Schmalfeldt saw the incorrect takedown, he

immediately notified WordPress, which immediately replaced the images. Hoge

continues to falsely insist that removal of the NASA images was Schmalfeldt's

original intent, thereby placing Schmalfeldt, intentionally, into a false, defamatory

light.

> The Dreadful Pro-Se Schmalfeldt™ says that the readers of this blog
> have great difficulty understanding what words actually say. Of
> course, sometimes the words are confusing.

> The words that the Cabin Boy™ alleges that WordPress neglected to
> include in the DMCA takedown notice they forwarded to me list the
> following blog post as containing infringing material,
> http://hogewash.com/2014/06/20/in-re-schmalfeldt-v-hoge-5, and
> he describes that post as "It is a full page screencap of my copyrighted
> 'Patriot-Ombudsman' blog that I have since taken off line, but the
> copyright can clearly be seen at the bottom of the page. Used without
> permission."

> http://hogewash.com/2014/07/15/what-the-words-actually-say/

75.     Whether or not these postings and others by Hoge and "Krendler"

were done with malice can be ascertained by a glance at their websites, which seem

largely dedicated to defaming me on a personal level and ruining what was once a

very good online reputation.

> The *New York Times* actual malice standard is deceptively simple:
> knowing falsity or reckless disregard of the truth or falsity of the
> defamatory statement. *New York Times Co. v. Sullivan,* *538 376 U.S.
> 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). *See also Garrison v.
> Louisiana,* 379 U.S. 64, 79, 85 S.Ct. 209, 218, 13 L.Ed.2d 125 (1964).
> Recklessness means that the publisher "in fact entertained serious
> doubts as to the truth of his publication," *St. Amant v. Thompson,* 390
> U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), or had a
> "subjective awareness of probable falsity." *Gertz v. Robert Welch, Inc.,*
> 418 U.S. 323, 335 n. 6, 94 S.Ct. 2997, 3005 n. 6, 41 L.Ed.2d 789 (1974).
> This standard makes it "essential to proving liability that the plaintiff
> focus on the conduct and state of mind of the defendant." *Herbert v.
> Lando,* 441 U.S. 153, 160, 99 S.Ct. 1635, 1640, 60 L.Ed.2d 115 (1979).

Although a publisher does not have an absolute duty to investigate, *St. Amant v. Thompson,* 390 U.S. 727, 733, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968), a publisher cannot feign ignorance or profess good faith when there are clear indications present which bring into question the truth or falsity of defamatory statements. A publisher cannot

> automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, . . . when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found *where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.*

> *St. Amant v. Thompson,* 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (footnote omitted) (emphasis added). *See also Curtis Publishing Co. v. Butts,* 388 U.S. 130, 169-70, 87 S.Ct. 1975, 1998-1999, 18 L.Ed.2d 1094 (1967) (Warren, C. J., concurring); *Carson v. Allied News Co.,* 529 F.2d 206, 211 (7th Cir. 1976); *Grzelak v. Calumet Publishing Co.,* 543 F.2d 579, 582 (7th Cir. 1975); *Fadell v. Minneapolis Star Tribune Co.,* 425 F. Supp. 1075, 1084-85 (N.D.Ind. 1976), *aff'd,* 557 F.2d 107 (7th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 452 (1977).

> *GERTZ v. ROBERT WELCH, INC.,* 680 F.2d 527, 537 (7th Cir. 1982) 538

76.    In their writing about Schmalfeldt, the fact that both Hoge and

"Krendler" were aware of the false and defamatory nature of their writing but chose

to go ahead with their malicious publication, both Counterclaim Defendants are

subject to monetary damages

> **The Supreme Court has recognized that actual injury in defamation cases is not solely measured by out-of-pocket economic loss. "Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974). This kind of actual injury was**

clearly established by the evidence presented at trial. (Id. at 540)

### FIFTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress and Harassment

77.     Both Hoge and "Krendler" are responsible for the intentional infliction of emotional distress upon the Counterclaim Plaintiff. This stress has led to an exacerbation and acceleration of his 14-year battle with Parkinson's disease, as outlined in Exhibit F of Counterclaim Defendant's Reply to Hoge's Motion to Strike Schmalfeldt's Motion to Dismiss (ECF 33).

78.     The Fourth Circuit Court of Appeals has ruled in *Gantt v. Security, USA, Inc.* 56 F.3d 547 (4th Cir. 2004):

> **The district court correctly recognized, that in Maryland (as in many other jurisdictions) a claim of intentional infliction of emotional distress has four elements: (1) The conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; (4) [t]he emotional distress must be severe. *Manikhi v. Mass Transit Admin.* 758 A.2d 95, 113 (Md. 2000) (internal quotation marks and citations omitted). *(Id.* at pp. 7-8)**

79.     There can be no question that the repeated taunting by "Krendler" on his blog, the depiction of his wife as an incontinent alcoholic promiscuous woman, the depiction of the Counterclaim Plaintiff dreaming about sex with his late twin brother meets all four of the elements set forth in *Gannt v Security, USA.*

80.     The constant use of the Courts as a weapon against Schmalfeldt by Hoge, the 367 dismissed criminal charges, the Peace Orders obtained by Hoge due to his convincing a Carroll County, Maryland, Circuit Court judge that blocking Schmalfeldt on Twitter would rise to the level of disabling a significant portion of his Internet accessibility. His using that Peace Order (and obtaining a six month extension based on the same story line to the same judge) as a weapon against Schmalfeldt, then trying to follow Schmalfeldt's Twitter Account less than one month after receiving his initial peace order. His bringing of this suit when he knew he had not properly filed applications for the material he was claiming under oath to have been registered, all have caused Schmalfeldt great emotional distress, opprobrium in his community with the several visits from the police to serve warrants, the brief issuance of an Arrest Warrant for Schmalfeldt in November 2013, and the stress of having to be carted with his Parkinson's disease symptoms worsening by the week from one courtroom to another to answer this man's vindictive, vexatious, malicious charges and complaints more than meet the requirements set down in *Gannt*.

81.     Schmalfeldt has made Hoge and "Krendler" aware that they have no chance to prevail in this case, given Hoge's violation of 17 USC 411(a) in not filing his copyright applications until seven and nine days after he initiated the instant suit. Their response has been to double down on the harassment, to invite the ridicule of their readers. While under CDA 230, Hoge cannot legally be held responsible for his comments, Schmalfeldt asks this Court to take Judicial Notice of the nature of the comments since the June 17, 2014 Preliminary Injunction Hearing,

the invective hurled at prominent UCLA Law Professor Eugene Volokh for his

Washington Post Blog post of date in which he indicates his agreement with this

Court's decision in the Preliminary Injunction hearing, and Hoge's seeming

unwillingness to read the handwriting on the wall and accept any sort of face-

saving, graceful exit to this legal quagmire he has blundered into.

82.    The fact that Hoge instigated the instant suit two days after being

informed by Schmalfeldt that he had withdrawn his own lawsuit against Hoge and

several others on the advice of his neurologist and the behest of his wife can only go

to show Hoge's intent to use the Court as a weapon, to run Schmalfeldt to the

ground, to continue to accelerate his Parkinson's disease symptoms to the point

where Schmalfeldt is either totally incapacitated or dead.

## INJURY

83.    As a direct and proximate result of Hoge's and "Krendler's" willful,

lnowing and intentional acts as set above, Schmalfelddt suffered permanent injury

to his reputation, to his health, to his ability to earn supplemental freelance income,

and an irreversible increase in the rate of progression in his Parkinson's disease.

Having to spend countless hours, days, weeks and months defending against the

false narratives, worrying about the 367 false criminal charges, the emotional

harassment caused by numerous death threats by e-mail, Twitter and comments to

his blog (obviously sent by Hoge supporters), the amount of damage done by

"Krendler" and Hoge, who has the temerity to sue Schmalfeldt for $690,000 for use

of material his previous ToS specifically allowed, has resulted in permanent, irreversible damage that cannot be properly measured.

## PUNITIVE DAMAGES

84.   The actions of Hoge and "Krendler" as demonstrated in this Counterclaim represent a remarkable, unbelievable, nearly incomprehensible amount of malice against someone only Hoge has ever met, someone "Krendler" knows by name only, a person neither has a legitimate quarrel with. The outrageous, egregious conduct, insult and perforce gratification and glee seen in Hoge and "Krendler's" writing about Schmalfeldt, celebrating each perceived victory and each new decline in Schmalfeldt's health, the causing of irreversible damage to his health and reputation, requires the most severe punishment this court can deliver. Accordingly, Schmalfeldt requests an award of punitive damages beyond and in excess of any statutory damages to compensate him for the improper and illegal removal of his books from the marketplace, and the irreversible, permanent damage done to his health and reputation due to Hoge's continuing manipulation of the Court to be used as a weapon against Schmalfeldt.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff requests the following relief from each counterclaim defendant:

- •   Compensatory damages and consequential damages of $1.500.000 from each counterclaim defendant.

21

- Punitive damages as the Court may determine appropriate to punish and deter Hoge and "Krendler" from ever engaging in this sort of behavior again and to deter others from doing the same.

- An ORDER requiring Hoge and "Krendler" to apologize to Schmalfeldt on their blogs, Twitter accounts, Facebook accounts or any other Internet platform where they post their opinions. These apologies are subject to the approval of the Court and Schmalfeldt.

- An ORDER requiring "Krendler" to reveal his various Facebook and Twitter "sock puppet" accounts.

- An ORDER for equitable relief as appropriate under applicable law, including but not limited to issuing a permanent injunction that bars Hoge or "Krendler" from retaliating against Schmalfeldt, his family, friends, or anyone else as punishment for Schmalfeldt filing this counterclaim.

- An ORDER requiring Hoge and "Krendler" to REMOVE all mention by name, nickname, inference or any other fashion, any reference to William M. Schmalfeldt.

- An ORDER of this Court referring Hoge for prosecution for violation of 17 USC § 506(c) and (e).

- Costs and fees incurred in the prosecution of this Counterclaim.

- Any further relief as this Court deems just and appropriate.

**JURY DEMAND**

Defendant and Counterclaim Plaintiff Schmalfeldt hereby demands a jury trial of all issues in this action triable as of right by a jury.

Respectfully submitted

**DATED:**      July 17, 2014

By:

William M. Schmalfeldt, *Pro Se*
6636 Washington Blvd., Lot 71
Elkridge, Maryland 21075
bschmalfeldt@comcast.net
410-206-9637 (telephone)

## Verification

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

William M. Schmalfeldt

## Certificate of Service

I certify that on the 17th day of July, 2014, I served a copy of the foregoing Reply to Counterclaim Defendant Hoge's Motion to Dismiss on William John Joseph Hoge III by Certified Mail, Return Receipt Requested to 20 Ridge Road, Westminster, MD 21157

William M. Schmalfeldt