```
          _____ FILED    _____ ENTERED
          _____ LOGGED   _____ RECEIVED
```

AUG - 1 2014

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____

William John Joseph Hoge,
*Plaintiff,*

v.

William M. Schmalfeldt,
*Defendant.*

United States District Court
For The District Of Maryland
Northern Division

Case No.  ELH-14-CV-1683

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 40)

COMES NOW Counterclaim Defendant William John Joseph Hoge with this

memorandum in opposition to Defendant's Motion for Summary Judgment (ECF No.40).

The motion is premature and should be denied without prejudice.  In support of his

opposition Mr. Hoge states as follows:

### MATERIAL FACTS ARE DISPUTED

Defendant's Motion for Summary Judgment ("MSJ") lists a few undisputed facts as

if they were the totality of the evidence bearing on the instant lawsuit.  That is not so.  Mr.

Hoge offers the following list as a non-exhaustive summary of material facts he believes

are still in dispute.  In Defendant's Amended Answer and Second Amended Counterclaim

(ECF No. 39) he denies the following material facts alleged by Mr. Hoge in his Amended

Complaint ("AC") (ECF No. 9) and supported either by evidence developed during the 26 July, 2014, hearing for a preliminary injunction ("Hearing") or the Declaration attached as Exhibit C ("Declaration"):

      a.) Defendant denies that Mr. Hoge screens comments to his site for editorial suitability. ECF No. 39, ¶ 10. He denies that Mr. Hoge deletes obscene or grossly off-topic comments. *Id.* Records retained by Mr. Hoge clearly demonstrate that he has exercised such editorial control over his website. *See* Exhibit C, Declaration, ¶ 1

      b.) Defendant says he does not know if Mr. Hoge bought the world book and ebook rights from "Paul Krendler" for the work in question. ECF No. 39, ¶¶ 11 and 28. The transaction documents exist. *See* Declaration, ¶ 2.

      c.) Defendant denies publishing *My Slow, Journalistic Death* as an ebook on or about 18 April, 2014. ECF No. 39, ¶ 19. He denies that Chapter 13 of that ebook reproduces a 14 April, 2014, website entry from Mr. Hoge's blog *in toto. Id.* He denies that the ebook was offered for sale and that copies were sold. *Id.* This is contradicted by his in court statement. A printed copy of the ebook (which the Court examined at length) was offered in evidence during the Hearing as Plaintiff's Exhibit 3. During the Hearing, Defendant authenticated that exhibit as an accurate copy of the ebook he published. The Hearing Exhibit 3 is attached to this memorandum as Exhibit D. The original *Hogewash!* article copied is shown

in Exhibit E.  Defendant also denies that any copies of *My Slow, Journalistic Death* were sold.  ECF No. 39, ¶ 19.  Mr. Hoge has a receipt for the sale of a copy. *See* Declaration, ¶ 3.

d.)  Defendant denies that his use of Mr. Hoge's copyrighted material in *My Slow, Journalistic Death* was infringing.  ECF No. 39, ¶ 20.  As can be seen in Exhibit D, Defendant's use was clearly contrary to the *Hogewash!* Terms and Conditions as posted at the time of the infringement (*See* ECF No. 25, at 4, 5) because he did not meet the specified condition with respect to providing a link to hogewash.com.  *See* Declaration, ¶ 10.

e.)  Defendant denies that his use of Mr. Hoge's copyrighted material in *My Slow, Journalistic Death* was without authorization from Mr. Hoge or the law.  He denies that his infringement was knowing and willful.  ECF No. 39, ¶ 21.  As can be seen in Exhibit D, Defendant's use was clearly contrary to the *Hogewash!* Terms and Conditions as posted at the time of the infringement because he did not meet the specified condition with respect to providing a link to hogewash.com. *See* Declaration, ¶ 10.

g.)  Defendant denies that his use of Mr. Hoge's copyrighted material in *Brain Dead* was without authorization from Mr. Hoge or the law.  He denies that his infringement was knowing and willful.  ECF No. 39, ¶ 25.  Defendant's use was clearly contrary to the *Hogewash!* Terms and Conditions as posted at the time

of the infringement because he did not meet the specified condition with respect to providing a link to hogewash.com. *See* Declaration, ¶ 10.[1]

h.) Defendant denies that his use of Mr. Hoge's material for which Mr. Hoge owns the world book and ebook rights in *Intentional Infliction* was without authorization from Mr. Hoge or the law. He denies that his infringement was knowing and willful. ECF No. 39, ¶ 29. When evaluating his denial, the Court should consider Defendant's own words from *Intentional Infliction*: "I doubt he ["Krendler"] will sue me for copyright, since he would have to review [*sic*] his actual name." *Id.*, at 2. *See* Exhibit A. Defendant's expectation that he would be sued but for the author's expressed desire to maintain his anonymity is a clear indication of Defendant's intent.

i.) Defendant denies that he infringed the copyrighted works cited in Counts V through XXXVII by incorporating them into blog posts or Twitter messages. ECF No. 39, ¶¶ 31, 32, 33, 34, 36, 37, 38. During the Hearing, Defendant admitted that he did not provide the required links to hogewash.com in either his blog posts or this tweets. Thus, Defendant's use was clearly contrary to the *Hogewash!* Terms and Conditions as posted at the time of the infringement

---

[1] On almost all printed material, it is practicable to show the website address "hogewash.com." Even a matchbook cover would provide sufficient space. Certainly, the space was available in a 286-page book such as *Brain Dead*. In fact, he did provide such a link to "Paul Krendler's" article in *Intentional Infliction*—although linking is not at issue with respect to that infringement.

because he did not meet the specified condition with respect to providing a link to hogewash.com. *See* Declaration, ¶ 10.

Defendant alleges other facts which Mr. Hoge disputes or which are immaterial to the instant lawsuit.

j.) In an attempt to invalidate Mr. Hoge's copyright registrations, Defendant alleges that Mr. Hoge has attempted to register copyrights for works in the public domain. He has focused especially on public domain content originally produced by the National Aeronautics and Space Administration ("NASA"). *See* , *e.g.*, ECF No. 35. Mr. Hoge denies attempting to register a copyright for any public domain works, particularly any work product from NASA. *See* Declaration , ¶¶ 4-9, and *infra* at pages 9-11.

k.) In an attempt to invalidate Mr. Hoge's copyright registrations, Defendant offers conclusory allegations that Mr. Hoge has engaged in "copyright misuse" by attempting to register copyrights for works he did not create, acquire as work-for-hire, or purchase. MSJ, ¶ 9 at 5. Mr. Hoge denies attempting to register copyrights for any works he does not lawfully own. *See infra* at pages 8 and 9.

l.) Defendant alleges that Mr. Hoge comes to this Court with unclean hands because "he has done the exact same thing," as Mr. Hoge alleges Defendant has done. MSJ, ¶ 6 at 3, 4. Mr. Hoge alleges that Defendant has copied all or substantially all of various postings from the *Hogewash!* website. AC, *passim*.

5

Mr. Hoge denies such extensive coping from any of Defendant's websites, and Defendant has not presented any evidence of such wholesale coping.  In any event, consideration of such an equitable consideration is irrelevant to a question of law.

m.)  Defendant alleges that Mr. Hoge's applications for registration are defective on multiple grounds.  MSJ, ¶¶ 10-13 at 5-7.  Mr. Hoge denies each alleged defect.  *See infra* at pages at pages 7 and 8.

n.)  Defendant alleges that his use of Mr. Hoge's material meets the requirements of the *Hogewash!* Terms and Conditions.  Mr. Hoge disputes that allegation, noting that links back to hogewash.com have not been provide where practicable.[2]  *See* Declaration, ¶ 10.

Given that these facts, material and immaterial, are still disputed and that neither side has been able to have discovery, the MSJ is premature and should be denied without prejudice.  Alternatively, Mr. Hoge should be allowed sufficient time to conduct discovery so as to fully develop a cross motion and supporting memorandum and to allow for the possibility of settlement via ADR.

---

[2] *Black's Law Dictionary* 1172 (6th ed. 1990) defines *practicable* as "Practicable is that which may be done, practiced, or accomplished; that which is performable, feasible, possible[.]"  The inclusion of a hyperlink within a website or a Twitter message is imminently practicable.  *See* Declaration, ¶ 10.

### DEFENDANT MISAPPLIES THE LAW TO SOME OF THE UNDISPUTED FACTS

Mr. Hoge did, in fact, file his Original Complaint ("OC") prior to filing the appropriate applications for registration with the Copyright Office. As Defendant notes, those registrations were filed on 5 June, 2014, and (Defendant missed this one) on 7 June, 2014. Having corrected his oversight, Mr. Hoge filed his AC on 10 June, 2014. Defendant argues in his MSJ that Mr. Hoge's initial oversight was a fatal error that could not be repaired with the AC. Defendant is wrong.

"As a general rule, 'an amended complaint ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001), quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 162 (2nd Cir. 2000). Fed. R. Civ. P. 15(a) allows a party to amend his pleading once as a matter of course within 21 days of serving it. Mr. Hoge's OC was served on 27 May, 2014, and the AC was filed on 10 June, an elapsed time of 13 days. That is well within the 21-day limit provided by the Rule, so the AC "would [replace] the original complaint lock, stock, and barrel." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008). Also, the Committee Notes on Rules—2009 Revision of Rule 15 explain that

> the right to amend once as a matter of course is no longer terminated by
> service of a responsive pleading. The responsive pleading may point out
> issues that the original pleader had not considered and persuade the
> pleader that amendment is wise.

Fed. R. Civ. P. 15, Notes. Therefore, any arguments Defendant raises about alleged defects in the OC are mooted because of its replacement by the AC. Such a non-germane issue is not grounds for summary judgment.

Additionally, the Court should note that Defendant no longer asserts that applications for registration of the copyrights were not filed. His statement that the Copyright Office shows a receipt for the transactions on 5 June, 2014, amounts to a judicial admission of the filings. *See* MSJ, ¶ 2 at 2.

The precedent in this Court allows for a copyright lawsuit to proceed while registration is pending. *See Patrick Collins, Inc. v. Does 1-22*, 11-CV-01772-AW ECF No. 18 (D.Md. 2011) at 3, 4. The MSJ should be denied.

## DEFENDANT MISUNDERSTANDS COPYRIGHT MISUSE

Defendant's argument for invalidating Mr. Hoge's copyright registrations seems to conflate copyright misuse with copyright fraud. Copyright misuse is analogous to patent misuse wherein an intellectual property owner uses his monopoly power as leverage to extend his rights beyond what is lawful. The classic example of patent misuse is the *Morton Salt* case.[3] Morton had a patent on a novel salt tablet dispenser. The company would only license it for use with their own salt tablets. However, the tablets were not

---

[3] *FTC v. Morton Salt Co.*, 334 U.S. 68 (1948).

covered by the same or any other patent.  Morton was using its license to unfairly prevent

other companies' tablets from being used in its dispenser.

The best known case of copyright misuse is probably *Lasercomb America, Inc. v.*

*Reynolds*, 911 F.2d 970 (4th Cir. 1990).  In that case the Court of Appeals found that

copyright misuse occurs when a copyright holder uses his rights in a manner that subverts

public policy.  *Id.*, at 976-977.  The plaintiff in *Lasercomb* was found to be using its

software copyrights to require licensees to enter into a non-competition agreement that

lasted for 99 years, longer than the term of the plaintiff's copyrights.

Mr. Hoge has not engaged in any activity with respect to his copyrights beyond

attempting to secure for a limited time the exclusive right to his writings.[4]  He has not

done anything to enlarge his rights beyond what is granted by law.  Nothing in this faulty

theory of copyright misuse suggested by Defendant supports his MSJ.  His motion should

be denied.

## MR. HOGE HAS NOT TRIED TO REGISTER COPYRIGHTS FOR ANY PUBLIC DOMAIN MATERIAL OR THE WORKS OF OTHERS

Defendant tries to assert that because public domain material (such as NASA

images) or comments belonging to others are included in Mr. Hoge's website, he has

committed copyright fraud.  MSJ, ¶ 9 at 5.  That is not the case.  Under Defendant's

---

[4] *See* U.S. Const. art. I, § 8, cl. 8.

9

theory of the law, the *New York Times* committed copyright fraud when it applied for registration of the 21 July, 1969, MEN WALK ON MOON edition of the newspaper shown in Exhibit B. The pictures of the Apollo 11 crew on the moon are public domain NASA images. Is the copyright for that issue of the *Times* therefore fraudulent?

The answer is: "Obviously not!" It is possible to include public domain material within a copyrighted work. This allows, for example, movies of *Richard III* or *A Midsummer Night's Dream* to be copyrighted. The copyright does not extend to rights over the public domain material but only to the originality of its use and manner of use within the copyrighted work. As the Fourth Circuit Court of Appeals noted in *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421 (4th Cir. 1986):

> As the Court said in *Apple Barrel Productions,* 730 F.2d at 387-88, copyrightability of a compilation or derivative work does not turn on whether the component parts of the collective work are original or in the public domain. Section 103 of the Act makes this plain. It declares that the validity of a copyright of a compilation or derivative work depends on the originality of the compiler's individual contribution to the work or material regardless of whether the individual items in the material have been or ever could have been subject to copyright. It follows that the validity of plaintiff's copyright does not depend on the copyrightability of the components represented by the underlying work but by the originality of its own contribution to the copyrighted work.

*Id.*, 440. Mr. Hoge's inclusion of public domain material in his copyrighted website is no more fraudulent than a television station's use of an image from a government weather satellite during the evening newscast weather segment.

Similarly, collections of works by multiple authors are compilations covered under § 201(c). That section specifies a default ownership arrangement when there is no other written agreement. However, the *Hogewash!* Terms of Service provide a written agreement which licenses Mr. Hoge's use of the comments posted to his blog. Mr. Hoge, as a licensee of the comments, holds the copyright to the compilation. He does not claim rights to the individual comments *per se*.[5]

In *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 US 340, 360 (1991), Justice O'Connor wrote that even a compilation of mere facts (which would be ineligible for copyright protection on their own) can be protected "to the extent that it features an original selection, coordination, or arrangement[.]" As noted *supra* at page 2 (Item a.), because Mr. Hoge exercises editorial control of the comment section of his website, even to the extent of occasionally editing comments, *Hogewash!* with all its comments and public domain inclusions is eligible for copyright protection. That being the case, there is nothing here to support the MSJ, so it should be denied.

---

[5] Mr. Hoge's uses the copyright works of his commenters under license. Defendant assert that he has a Fair Use right to use the work of others without permission. While that may be true in some cases, the facts in the instant lawsuit are different. Defendant misappropriates whole works. Suppose William Randolph Hearst had been sufficiently angered by *Citizen Kane* that he decided to create a rebuttal film and that he did so by taking the original movie and adding brief commentaries at the beginning and end. Suppose he released his version into theaters and charged admission. Fair Use would not have saved him from the resulting lawsuit from Orson Welles and RKO Pictures. That is exactly analogous to what Defendant has done with articles from *Hogewash!*.

## DEFENDANT'S MOTION VIOLATES LOCAL RULE 105.2(c)

In his Motion for Summary Judgment ("MSJ") Defendant ably articulates the standard for summary judgment. This is not surprising considering who wrote the words he used. In a motion fraught with complaints about Plaintiff's alleged misuse of the work of others, Defendant has incorporated an extended quotation of the work of Judge Garbis —without attribution.[6] Of course, legal briefs often recycle the excellent arguments of others,[7] but Defendant uses Judge Garbis's opinion ineptly. Judge Garbis writes of the how a court should weigh the opposing assertion made in cross motions. There is no cross motion filed in the instant lawsuit because Defendant failed to follow Local Rule 105.2(c). That rule requires that if both parties plan to file for summary judgment they should coordinate with one another as to who will file the first motion and who will file the cross motion. Mr. Hoge will probably make such a filing after discovery if ADR should fail to bring a settlement. However, there has been no such coordination. Therefore,

---

[6] Beginning with the words "A motion for summary judgment shall be granted ..." (MSJ at 1) and continuing through the words "... *See Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)" (MSJ at 2), Defendant presents Judge Garbis's analysis as his own. A proper citation would be *U.S. v. Shriner*, Case No. 11-CV-02929, ECF No. 62 (D.Md. 2014) at 2, 3.

[7] Defendant includes a rather erudite discussion of copyright misuse in paragraph 6 of his MSJ (at 4). It is ripped off word-for-word from John Baker McClanahan, *Copyright Misuse As A Defense In An Infringement Action: Lasercomb America, Inc. V. Reynolds*, 49 Wash. & Lee L. Rev. 213 (1992), http://scholarlycommons.law.wlu.edu/wlulr/vol49/iss1/14, at 213, 214, with footnotes 2-14 inserted parenthetically, and it is used without attribution to either Mr. McClanahan or the *Washington & Lee Law Review*.

Defendant's MSJ should denied without prejudice in order to allow for the coordination between the parties contemplated by Local Rule 105.2(c).

## CONCLUSION

WHEREFORE, Mr. Hoge asks this Honorable Court to deny without prejudice Defendant's Motion for Summary Judgment, allowing the ADR process to go forward, and to permit discovery to occur along with coordination of a proper motion for summary judgment and cross motion pursuant to Local Rule 105.2(c).  Alternatively, Mr. Hoge asks the Court to grant him adequate time to conduct discovery and to allow 60 days for the preparation of a cross motion, and he requests an evidentiary hearing.

Date:  1 August, 2014                                   Respectfully submitted,

William John Joseph Hoge, *pro se*
20 Ridge Road
Westminster, Maryland  21157
(410) 596-2854
himself@wjjhoge.com

13

## Verification

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief and that all exhibits are true and correct copies of the originals.

William John Joseph Hoge

## Certificate of Service

I certify that on the 1st day of August, 2014, I served a copy of the foregoing Opposition on William M. Schmalfeldt by First Class Mail to Trailer 71, 6636 Washington Blvd., Elkridge, Maryland  21075.

William John Joseph Hoge